252 N.J. Super. 384 (1991)
599 A.2d 968
MARIA V. LARACUENTE, PLAINTIFF,
v.
MARIA A. LARACUENTE, MACY'S NORTHEAST, INC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
November 13, 1991.
*385 Felix Lopez Montalvo, for plaintiff.
Frank P. Minichino for defendant Macy's Northeast, Inc. (Minichino & Mautone, P.A., attorneys).
NEWMAN, J.S.C.
The defendant, Macy's Northeast Inc. moves for summary judgment against plaintiff, Maria V. Laracuente raising issues of first impression in this state involving the Fair Credit Reporting Act (FCRA) 15 U.S.C. 1681 et seq. and its effect on retail merchants in state consumer actions. The narrow issue is whether retail merchants, as providers of information to credit reporting agencies, are immune from suit under the Act where they are charged with allegations of negligence absent any assertions of malice.
The facts presented in a light most favorable to the plaintiff are as follows. The plaintiff instituted suit against Macy's charging plaintiff's sister-in-law, defendant, Maria A. Laracuente, allegedly used the plaintiff's social security number and vital statistics to obtain credit at Macy's. Apparently the defendant had been living in plaintiff's house prior to her marriage to plaintiff's brother. In 1979-1980 the plaintiff lost her social security card and had to obtain a new one. Plaintiff has suggested defendant could have rummaged through her drawers or stolen the original social security card. In 1989 plaintiff discovered the defendant's activities when she applied for a car loan at Autoland on Route 22 in Springfield, New Jersey and could not obtain credit.
The crux of plaintiff's argument is that Macy's was negligent in allowing defendant to sign her name and further that the signatures did not match. Notwithstanding this argument, at deposition plaintiff testified she never saw defendant's signature *386 and furthermore had no knowledge whether its appearance was similar to her own.
In addition, plaintiff has no knowledge regarding the status of her credit rating. Two T.R.W. credit reports were obtained by plaintiff on June 30, 1989 and August 22, 1989. While the earlier report referred to Macy's Northeast Inc., the latter report failed to make any mention of Macy's. The August T.R.W. only reflects two accounts due: Shoppers Charge and Lerners in a total amount of $305.00. As of August 22, 1989 there was no credit due and owing to Macy's.
Plaintiff conceded that other than her credit rating she has suffered no loss of money or any other loss. Moreover, plaintiff has not requested or obtained a T.R.W. report since August 22, 1989 and therefore does not know the present status of her credit rating. Finally, plaintiff has not applied for any type of loan since the incident at Autoland in 1989 and testified that she does not know whether she would be approved for a loan. Against this background, plaintiff claims to have suffered economic hardship and damage to her credit.
Macy's argues that the plaintiff has failed to state a cause of action pursuant to the Fair Credit Reporting Act (FCRA) 15 U.S.C. 1681 et seq. and further that the Act preempts all state consumer actions.
The purpose of the Fair Credit Reporting Act is:
... to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter. 15 U.S.C. 1681.
The Act provides for the protection of consumer's reputation while recognizing the legitimacy of credit reports. See Thornton v. Equifax Inc., 619 F.2d 700 (8th Cir.1980), cert. denied 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). The legislative history discloses an intention to not include mere providers of information within the definition of a "consumer reporting *387 agency". In amendments to the Act the House stated its concern that the definition of a "consumer reporting agency" not include, "financial institutions whose lending officers merely relate information about an individual with whom they have had direct financial transactions." H.R.Rep. No. 975, 91st Cong., 2d Session 2, reprinted in 1970 U.S.Code Cong. and Admin.News 4394, 4414. Clearly the House did not intend to insulate financial institutions alone but rather all entities similarly situated in the role of providing information about an individual with whom they have had direct transactions.
In order to prevail under the Act a plaintiff must initially prove that the defendant is a "consumer reporting agency" defined as
any person which, for monetary fees, dues or on a cooperative non-profit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. 1681a(f).
The determination of whether an entity is a "consumer reporting agency" is mutually dependent on the determination of whether the information is considered a consumer report. A person or entity can not be a "consumer reporting agency" where it provides only information that is excepted from the definition of a "consumer report" under section 603(d). Excluded from the definition of "consumer report" are any reports containing information regarding transactions or experiences between the consumer and the person making the report. See 16 CFR Ch. 1, Sec. 600.2 (1991). In the commentary on the Act the CFR provides examples of those entities excluded from the definition of consumer report including retail store, hospitals, banks, credit unions, and universities. Id. at 344 (emphasis added). However, the commentary does caution that the exemption no longer applies where reports include information beyond their own transactions or experiences with the consumer. Insofar as the terms "consumer reporting agency" and "consumer report" are mutually dependent upon one another *388 an immunity from liability is carved out of the Act where there exists one term but not the other. Macy's contends that it does not fall within the definition of a "consumer reporting agency" as contemplated by the Act. Federal authority clearly and unequivocally supports Macy's contention.
In Todd v. Associated Credit Bureau Services, Inc., 451 F. Supp. 447 (E.D.Pa. 1977), aff'd 578 F.2d 1376 (3d Cir.1978) cert. denied, 439 U.S. 1068, 99 S.Ct. 834, 59 L.Ed.2d 33 (1979) the District Court concluded the defendant Hess', as a retail department store could not be considered a consumer reporting agency as defined under the Act. In Todd the plaintiff's account with Hess' reached a high balance in excess of $1200.00 in October 1972. Subsequently Hess' charged off the amount to profit and loss and turned over the account to General Credit Control, Inc. for collection. The Todds had extinguished the debt to Hess' by September 1974; however, as of November 1975 the Todd's credit report showed that as of 1973 the plaintiffs owed Hess' $1200.00. The report contained no mention of the eventual satisfaction of the debt. As a result, plaintiffs alleged negligent noncompliance with the Act. Quoting Porter v. Talbot Perkins Children's Services, 355 F. Supp. 174, 177 (S.D.N.Y. 1973) the Todd court said, "[W]hen a firm gives its own credit experience on a consumer to a credit bureau, that information does not constitute a consumer report." Todd at 449. Hence, Hess Department Store was held not to be a "consumer reporting agency." [See also, Mitchell v. First National Bank of Dozier, 505 F. Supp. 176, 177 (M.D.Ala. 1981). There, in holding that a bank was not a "consumer reporting agency", the court observed, "[p]arties who do no more than furnish such information are simply not covered by ... FCRA."]
A case directly in point is Rush v. Macy's New York, Inc., 775 F.2d 1554 (11th Cir.1985). The issue of whether Macy's fell within the purview of the Fair Credit Reporting Act was specifically addressed. In Rush the plaintiffs found an "R-9" credit rating, the lowest possible rating, next to the entry for *389 their Macy's account on a report furnished by Credit Bureau, Inc. Due to the poor credit rating the Rushes were denied credit on several occasions. Consequently the plaintiffs filed a complaint charging that Macy's and CBI willfully and negligently failed to comply with the FCRA. Rejecting plaintiff's claims, the Court held, "Macy's does not fall within this definition. It did no more than furnish information to a credit reporting agency." Id. at 1557.
As shown, federal courts have come to the conclusion that a provider of information, such as a retail department store, cannot constitute a consumer reporting agency as defined within the Act. The result should be no different in this State. Here Macy's did no more than furnish a credit report on plaintiff to T.R.W. Macy's Northeast Inc. does not regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information. See generally 15 U.S.C. 1681a(f). To the contrary, Macy's submits credit experience reports to consumer reporting agencies such as T.R.W. who in turn are subject to the disclosure requirements of FCRA. Thus Macy's Northeast does not come within the scope of the Act and defendant's motion for summary judgment must be granted insofar as plaintiff has failed to state a cause of action upon which relief can be granted pursuant to 15 U.S.C. 1681 et seq.
The second issue to be addressed is whether the FCRA preempts all other state consumer actions. In this connection, the operative provision is found in 15 U.S.C.A. 1681h(e) which reads:
Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, 1681m of this title, except as to false information furnished with malice or willful intent to injure such consumer.
*390 This section specifically restricts certain types of actions that may be brought against one who furnishes information to a consumer reporting agency. No doubt the statutory immunity was put in place to encourage entities to report credit information without fear of being sued. In turn the flow of credit would be facilitated and readily accessed by those purchasing goods and services which serves as a primer in any economy. See, Mitchell, supra, at 178 wherein the court stated Congress intended that subsection h(e) be used as a shield against common law actions when the information giving rise to the cause of action is obtained by the consumer pursuant to the provisions of the Act. Consequently, a consumer may not bring a common law action based on information disclosed pursuant to the Act. An exception exists where the information is false and furnished with malice or willful intent to injure. See generally Thornton v. Equifax Inc., supra, at 703, Mitchell v. First National Bank of Dozier, supra at 178. Aside from the exception, section 1681h(e) of the Act bars any common law action brought by the consumer.
No New Jersey case has squarely addressed the issue of preemption; namely, whether the immunity afforded under the federal law precludes any state common law claims. The court in Krumholz v. T.R.W. Inc., 142 N.J. Super. 80, 360 A.2d 413 (App.Div. 1976), certif. denied, 71 N.J. 532, 366 A.2d 687 (1976) specifically declined to say whether the Act was intended to preempt the defamation law concerning the liability of a consumer credit reporting agency. However, the Krumholz court did state that a credit reporting agency has a qualified or conditional privilege to publish false information, "provided that the information was given under an honest belief in its truth and without express or actual malice." Id. at 84. We need not pass on whether Macy's, as a provider of information has a qualified or conditional privilege insofar as plaintiff has not overcome the burden of establishing malice. In fact, plaintiff never made any assertions as to malice on the part of Macy's. The immunity extended in 15 U.S.C. 1681h(e) covers *391 Macy's and bars plaintiff from instituting any common law claims against the retail entity.
In sum, plaintiff has failed to state a cause of action under the Fair Credit Reporting Act. Moreover, the Act, by its terms, bars the institution of any consumer common law claims, in the absence of any allegation of malice. No such allegations were made here. Accordingly, Macy's Northeast Inc.'s motion for summary judgment is granted.