**GREENWOOD TRUST COMPANY,**
d/b/a Discover Card Finance
Services, Petitioner,

v.

**Valerie L. CONLEY, n/k/a Valerie
L. Shaw, Respondent.**

No. 96SC189.

Supreme Court of Colorado,
En Banc.

June 2, 1997.

Holme, Roberts & Owen, LLC, Brent E. Rychener, G. Leland Dutcher, Jr., Colorado Springs, for Petitioner.

Richard C. Whaley, P.C., Richard C. Whaley, Colorado Springs, Richard K. Walsh, Colorado Springs, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari in the case of *Conley v. Greenwood Trust Co.,* 923 P.2d 307 (Colo. App.1996), to determine whether section 5–5–108, 2 C.R.S. (1992), of the Colorado Uniform Consumer Credit Code is preempted by a provision of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 (1994).[1] The court of appeals held that the Fair Credit Reporting Act does not preempt section 5–5–108 because the Colorado statute is not an action in the nature of defamation, and reversed the trial court's entry of summary judgment. We determine that a claim solely under subsection 5–5–108(4)(d)(IV) is in the nature of defamation and is prohibited by 15 U.S.C. § 1681 to the extent that malice or willful intent to injure is absent. We affirm in part and reverse in part.

## I.

This case was initiated by Valerie Conley, now known as Valerie Shaw (Shaw), the plaintiff below, against Greenwood Trust Company, doing business as Discover Card Finance Services (Discover), under section 5–5–108, 2 C.R.S. (1992), of the Uniform Consumer Credit Code. The record upon which we rely for the facts set forth below consists of Shaw's complaint, Discover's motion for summary judgment, and uncontested eviden-

---

1. The issue on which we granted certiorari is: Whether the court of appeals erred in holding that 15 U.S.C. § 1681h(e) does not preempt a claim under § 5–5–108, 2 C.R.S. (1992), where the claim is based upon the disclosure of false credit information.

tiary documents filed in support of and in opposition to the summary judgment motion. Because we are reviewing a grant of summary judgment in favor of Discover, we describe the facts in the light most favorable to Shaw.

Discover sent Shaw several collection notices regarding a $1219 balance due on a Discover credit card during the course of her divorce. In September 1991, Shaw's attorney wrote to Discover that Shaw had never applied for, possessed, or made any charges with a Discover card.

Despite this notification, Discover reported the alleged unpaid debt to credit reporting agencies. An April 1992 credit report from Equifax has an entry for a Discover card, indicating that Shaw owed the disputed $1219 debt, that it was past due, and that the account had a poor credit rating. The Discover card entry contained the statement "charged off account."

Shaw commenced this action in February of 1993. Her complaint alleged that Discover provided false and defamatory credit information to consumer credit reporting agencies which damaged her credit reputation, caused her to lose credit opportunities, and caused her mental and emotional distress. Shaw also alleged that Discover's conduct in providing this false and defamatory credit information was "willful, wanton, malicious, unconscionable, and outrageous," and was done with the deliberate intent of damaging her credit reputation. Shaw also claimed that Discover had reported that it had "charged off to its bad debt accounts" the $1219 debt, implying that it regarded the debt to be uncollectible.

Shaw's complaint stated only one specific legal theory: a violation of section 5–5–108, 2 C.R.S. (1992), which prohibits unconscionable debt collection practices. The statute does not define unconscionability, but rather provides a list of factors which a fact-finder shall consider in determining whether a particular debt collection practice is unconscionable.[2] Among the factors to be considered is causing injury to the debtor's reputation or economic status. § 5–5–108(4)(d), 2 C.R.S. (1992). Among the various ways such an injury may be inflicted is by disclosing information about a disputed debt without disclos-

2. Section 5–5–108 provides in pertinent part:

....
(2) With respect to a consumer credit transaction, if the court as a matter of law finds that a person has engaged in ... unconscionable conduct in collecting a debt arising from that transaction, the court may grant an injunction and award the debtor any actual damages he has sustained.
....
(4) In applying subsection (2) of this section, consideration shall be given to each of the following factors, among others, as applicable:
 (a) Using or threatening to use force or violence against the debtor or members of his family;
 (b) Communicating with the debtor or a member of his family at frequent intervals or at unusual hours or under other circumstances so that it is a reasonable inference that the primary purpose of the communication was to harass the debtor;
 (c) Using fraudulent, deceptive, or misleading representations such as a communication which simulates legal process or which gives the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney at law when it is not, or threatening or attempting to enforce a right with knowledge or reason to know that the right does not exist;
 (d) Causing injury to the debtor's reputation or economic status by:
 (I) Disclosing information affecting the debtor's reputation for credit worthiness with knowledge or reason to know that the information is false;
 (II) Orally communicating with the debtor's employer before obtaining a final judgment against the debtor, except: As permitted by statute; or to verify his employment; or to ascertain his whereabouts; or to request that the debtor contact the creditor;
 (III) Disclosing to a person, with knowledge or reason to know that the person does not have a legitimate business need for the information, or in any way prohibited by statute, information affecting the debtor's credit or other reputation; or
 (IV) Disclosing information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact....
 (e) Engaging in conduct with knowledge that like conduct has been restrained or enjoined by a court in a civil action by the administrator against any person pursuant to the provisions on injunctions against fraudulent or unconscionable agreements or conduct (section 5–6–111).

ing the fact that it is disputed. § 5–5–108(4)(d)(IV), 2 C.R.S. (1992).

In its answer, Discover admitted that it had charged the disputed debt off to its bad debt accounts, and did not deny having reported this fact to credit reporting agencies. It later sent a "universal data form" to consumer reporting agencies instructing them to delete Shaw's "name [from the debt as] the result of [a] legal settlement."[3] Discover asserted that its actions were subject to qualified immunity under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 (1994) (FCRA).

Section 1681h(e) of the FCRA states in pertinent part that "no consumer may bring any action or proceeding *in the nature of defamation,* invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e) (1994) (emphasis added).[4] Discover asserted that it was immune under this statute because it did not act with malice or willful intent to injure Shaw in disclosing information concerning the disputed debt.

Discover moved for summary judgment on the basis of this federal immunity, as well as for other reasons which are no longer at issue.[5] In support of its motion, Discover submitted a telemarketing form indicating that Shaw had applied for a Discover credit

card by telephone. The telemarketing form was not signed by Shaw. Discover included a copy of Shaw's deposition, in which she stated that the telemarketing form must be "a lie," because she never applied for a Discover card. Discover also submitted a copy of the form which it sent to consumer credit reporting agencies, asking those agencies to delete the previously reported debt from Shaw's credit report because of a "legal settlement."

In her response to Discover's summary judgment motion, Shaw asserted that the qualified immunity of the FCRA only applied to information disclosed *by* consumer reporting agencies to others, and did not apply to information which Discover disclosed *to* consumer reporting agencies. Shaw also argued that even if the FCRA were applicable, her claim would not be barred by § 1681h(e) because Discover acted with malice. Shaw submitted a copy of the Equifax report which showed that even after she had notified Discover that she did not owe the debt, Discover still reported that it had "charged off" the debt as uncollectible. Shaw maintained that this action demonstrated Discover's malicious and willful disregard of the unconscionability factor in subsection 5–5–108(4)(d)(IV), which requires debt collectors to report the fact that a debt is disputed when disclosing information about the debt. In so doing, Shaw conceded that if the qualified immunity of the FCRA were applicable, then her entire claim under section 5–5–108 was premised upon Discover's alleged willful violation of subsec-

§ 5–5–108, 2 C.R.S. (1992).

**3.** A line on the universal data form asking for "reason for deletion or status change from adverse to favorable" was filled out: "Deletion of Valerie Conley's name the result of legal settlement."

**4.** Section 1681h(e) states in its entirety:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, *or*

based on information disclosed by a user of a consumer report to or a consumer against whom the user has taken adverse action, based in whole or in part on the report, except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e) (1994 & 1997 Supp.). The underlined text was added by a 1996 amendment, *see* Pub.L. No. 104–208, 110 Stat. 3009., and is therefore not directly applicable to this case.

**5.** Discover also asserted a statute of limitations defense that it later withdrew, and it asserted that Shaw could not enjoy the protections of section 5–5–108 because she denied owing any debt and was therefore not a "debtor" under that statute. The court of appeals rejected this argument as "bordering on disingenuity." *Conley,* 923 P.2d at 309. The qualified immunity defense

tion 5–5–108(4)(d)(IV).[6]

For the purpose of ruling on Discover's motion for summary judgment, the trial court was required to resolve disputed issues of fact in the light most favorable to the nonmoving party. C.R.C.P. 56; *see McConnell v. St. Paul Fire & Marine Ins. Co.*, 906 P.2d 109, 111 (Colo.1995). The trial court held, without any explanation, that there were no issues of disputed fact and granted Discover's motion for summary judgment.

Shaw appealed, and the court of appeals reversed. The court of appeals noted that Discover "is a 'person who furnish[ed] information to a consumer reporting agency' and, at least to this extent, is 'subject to the provisions' of the [FCRA]." *Conley v. Greenwood Trust Co.*, 923 P.2d 307, 309 (Colo.App.1996). The court of appeals did not otherwise address Shaw's argument that § 1681h(e) does not apply.

Having determined that § 1681h(e) of the FCRA applied, the court of appeals considered whether it preempted section 5–5–108. By its language, § 1681h(e) of the FCRA preempts all causes of action "in the nature of defamation." Shaw's action against Discover for unconscionable debt collection practices was entirely premised upon only one of the several unconscionability factors enumerated in the statute—subsection 5–5–108(4)(d)(IV). Shaw alleged that Discover had injured her "reputation or economic status" by "disclosing information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact." The question was whether Shaw's claim under this subsection was "in the nature of defamation."

The court of appeals held that § 1681h(e) did not preempt Shaw's claim because it was not an action in the nature of defamation. The court reasoned that

an action under section 5–5–108 is not an action 'in the nature of defamation [or] invasion of privacy'; it is an action to enforce a statutory right. And, its enforcement is not dependent upon proof of any common law tort. Rather, it requires a consideration of numerous factors to determine whether a creditor's actions have been unconscionable.

*Conley*, 923 P.2d at 309. Having determined that the FCRA did not preempt Shaw's action under section 5–5–108, the court of appeals reversed the trial court's entry of summary judgment and remanded for further proceedings.[7]

## II.

■ Before addressing whether and to what extent the FCRA preempts section 5–5–108, we must first determine whether the FCRA applies to these facts. The FCRA does not govern debt collection. *Cf.* 15 U.S.C. § 1692 (1994) (Fair Debt Collection Practices Act). Rather, the FCRA is directed toward consumer reporting agencies, such as Equifax and TRW, which collect and compile information into consumer credit reports. The purpose of the FCRA is to

require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. . . .

15 U.S.C. § 1681 (1994) (Congressional findings and statement of purpose). The various sections of the FCRA govern how consumer credit reporting agencies may collect and disclose information.

Discover is not a consumer credit reporting agency. *See* 15 U.S.C. § 1681(f) (defin-

---

of § 1681h(e) is the only remaining basis for summary judgment.

**6.** In her brief before this court, Shaw asserts that Discover violated subsection 5–5–108(4)(d)(IV) when it instructed consumer credit reporting agencies to delete the debt from Shaw's file because of a "legal settlement" without mentioning the fact that Shaw consistently maintained that she owed Discover nothing. Shaw's cause of

action under the statute is thus still entirely premised upon alleged violations of subsection 5–5–108(4)(d)(IV).

**7.** The court of appeals also noted that to the extent Shaw's complaint could be interpreted as stating any other claims, such as common law defamation, she had abandoned those claims on appeal. *See Conley*, 923 P.2d at 309. We agree that Shaw has abandoned any claims besides a

ing "consumer reporting agency"); *see also Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1557 (11th Cir.1985) (department store which extended credit was not a consumer reporting agency); *Mitchell v. Surety Acceptance Corp.*, 838 F.Supp. 497, 500 (D.Colo. 1993) (debt collection agency was not a consumer reporting agency); *Mitchell v. First Nat'l Bank of Dozier*, 505 F.Supp. 176, 177 (M.D.Ala.1981) (bank which did no more than furnish information to a consumer reporting agency was not itself a consumer reporting agency). For purposes of this case, Discover is a "person who furnishes information to a consumer reporting agency" under the FCRA, and § 1681h(e) in particular. *See Mitchell*, 838 F.Supp. at 501; *Mitchell*, 505 F.Supp. at 176; *see also Laracuente v. Laracuente*, 252 N.J.Super. 384, 599 A.2d 968, 970 (Law Div.1991). Shaw is a consumer under the FCRA.

The qualified immunity provision of the FCRA provides:

> Except as provided in sections 1681n and 1681o of this title,[8] no *consumer* may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or *any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title*, except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (1994) (emphasis added). This immunity provision may therefore apply to Shaw's action against Discover, provided that the action is "based on information disclosed pursuant to section 1681g, 1681h, or 1681m" of the FCRA.

Section 1681m is entitled "Requirements on users of consumer reports." That section states, in pertinent part:

> **(b) Adverse action based on reports of persons other than consumer reporting agencies**
>
> Whenever credit for personal, family or household purposes involving a consumer is denied ... because of *information obtained from a person other than a consumer reporting agency* bearing upon the consumer's credit worthiness ..., the user of such information shall ... disclose the nature of the information to the consumer.

15 U.S.C. § 1681m(b) (1994) (emphasis added).

In opposing the motion for summary judgment, Shaw has offered no evidence in support of her claims other than damage to her reputation. The only evidence which Shaw has offered to show how her reputation has been damaged is the report from Equifax which shows the false debt. In opposing the motion for summary judgment, Shaw has not offered, argued, or alleged any other evidence to show how her reputation has been injured. Because Shaw's action is based solely upon information which Discover disclosed to a consumer reporting agency, it falls within the purview of § 1681m(b) of the FCRA.[9]

---

violation of subsection 5–5–108(4)(d)(IV) in this litigation.

8. Sections 1681n and 1681o create causes of action against consumer reporting agencies which willfully or negligently fail to comply with the FCRA's requirements. Because Discover is not a consumer reporting agency, it is not subject to these provisions. *See Mitchell*, 505 F.Supp. at 177; *Laracuente*, 599 A.2d at 969–70; *Pulver v. Avco Fin. Servs.*, 182 Cal.App.3d 622, 227 Cal. Rptr. 491, 496 (1986).

9. Discover concedes that it did not disclose the instant information about Shaw's alleged debt pursuant to § 1681h. Discover maintains that its information must have been disclosed pursu-

ant to either § 1681g or § 1681m, although it does not explain how the present facts fit into either of those sections of the FCRA.

Section 1681g, entitled "Disclosures to consumers," does not apply here. It details precisely what types of information a consumer reporting agency must disclose to a consumer who requests her credit report. Here, Shaw's allegations are not based on information which a consumer reporting agency disclosed to her, but are based on information which Discover disclosed to consumer reporting agencies. Shaw's suit is thus not based on information disclosed pursuant to § 1681g. *But cf. Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1069 (9th Cir.1992) (reaching § 1681h(e) immunity through § 1681g, although not explaining how § 1681g applied).

We conclude that Shaw's action is based upon information disclosed pursuant to § 1681m(b), and as a result the qualified immunity provisions of § 1681h(e) are applicable to these claims.[10] We now turn to the question of whether and to what extent § 1681h(e) preempts Shaw's claim under section 5–5–108.

### III.

The authority of a federal statute to preempt a state statute is derived from the Supremacy Clause of the United States Constitution and is commonly referred to as the preemption doctrine. The preemption doctrine reflects a desire for uniformity of laws in areas of national concern, providing that when Congress exercises its legislative powers in a regulatory field, similar state legislation may be rendered invalid. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) ("[S]tate law is nullified to the extent it actually conflicts with federal law.").

■ This court has outlined the instances in which federal preemption may occur. In *Department of Health v. The Mill,* 887 P.2d 993 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995), we stated:

> Federal law preempts state law when Congress expresses clear intent to preempt state law; when there is outright or actual conflict between federal and state law; when compliance with both federal and state law is physically impossible; when

there is an implicit barrier within federal law to state regulation in a particular area; when federal legislation is so comprehensive as to occupy the entire field of regulation; or when state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Id.* at 1004 (citing *Frontier Airlines, Inc. v . United Air Lines, Inc.,* 758 F.Supp. 1399, 1407 (D.Colo.1989)).

In *Department of Health,* this court began its analysis of the preemption doctrine with the assumption that historic state police powers should not be abrogated by federal law unless that purpose is clearly indicated in the federal statute. 887 P.2d at 1004. Thus, we must determine the intent of Congress in enacting the FCRA.

■ Congressional intent is determined primarily from the statute's plain language, and secondarily from the statute's legislative history. *See id.* (citing *Mass v. Martin Marietta Corp.,* 805 F.Supp. 1530, 1534 (D.Colo. 1992)).

> Congressional intent to pre-empt state law in a given area of law can be explicitly set forth or can be implicit. In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law ... or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.

> *But see Retail Credit Co. v. Russell,* 234 Ga. 765, 218 S.E.2d 54, 56 (1975) (declining to apply FCRA to suit by consumer against credit reporting agency which published defamatory information about him); *Pulver v. Avco Fin. Servs.,* 182 Cal.App.3d 622, 227 Cal.Rptr. 491 (1986) (creditor's reporting of false debt to consumer reporting agencies was not subject to qualified immunity under § 1681h(e) of the FCRA); Note, *The Fair Credit Reporting Act: Are Business Credit Reports Regulated?,* 1971 Duke L.J. 1229, 1241 n. 67 (1971) (citing the Federal Trade Commission's original 1971 interpretation of the FCRA for the proposition that the qualified immunity provisions of § 1681h(e) were not intended to apply to actions "when the consumer obtains the information independently of agency or user disclosures").

---

**10.** Cases have frequently applied § 1681h(e) immunity to persons who furnish information to a consumer reporting agency, but generally neglect to state whether they do so based on information provided pursuant to § 1681g, § 1681h or § 1681m. The facts of these cases usually involve a creditor which reports a bad debt to a consumer reporting agency, suggesting that § 1681m would apply. *See Rhodes v. Ford Motor Credit Co.,* 951 F.2d 905, 906 (8th Cir.1991); *Mitchell v. Surety Acceptance, Corp.,* 838 F.Supp. 497, 501 (D.Colo.1993); *Nikou v. INB Nat'l Bank,* 638 N.E.2d 448, 451 (Ind.Ct.App.1994); *Parker v. Laurance Eustis Mortgage Corp.,* 615 So.2d 1102, 1103 (La.Ct.App.1993); *Laracuente v. Laracuente,* 252 N.J.Super. 384, 599 A.2d 968, 969–70 (Law Div.1991).

*In re Marriage of Heupel,* 936 P.2d 561, 564 (Colo.1997) (citations and internal quotation marks omitted).

■ Here, Congress explicitly stated the precise degree to which it intended the FCRA to preempt state law. Section 1681t of the FCRA provides that the FCRA is not intended to

> annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, *except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.*

15 U.S.C. § 1681t (1994) (emphasis added). Congress thus clearly expressed its intent not to preempt the field of state credit reporting and debt collection legislation with the FCRA. *See Credit Data of Arizona, Inc. v. Arizona,* 602 F.2d 195, 197 (9th Cir.1979). As a result, section 5–5–108 will be preempted only to the extent that it is in outright or actual conflict with the FCRA.

The preemptive provision of the FCRA at issue here is § 1681h(e), which states in pertinent part:

> no consumer may bring any action or proceeding *in the nature of defamation* ... against ... any person who furnishes information to a consumer reporting agency, ... *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (1994) (emphasis added). The court of appeals determined that section 5–5–108 was not preempted by the above language because it was not an action in the nature of defamation. We conclude that an action solely for injury to reputation, by disclosing a debt to a credit reporting agency without disclosing that the debt is disputed, is an action in the nature of defamation.

A.

The court of appeals held that "an action under section 5–5–108 is not an action 'in the nature of defamation [or] invasion of privacy'; it is an action to enforce a statutory right." *Conley v. Greenwood Trust Co.,* 923 P.2d 307, 309 (Colo.App.1996). We do not view this distinction as determinative. A legislature's decision to codify what was once only a common law cause of action does not necessarily change the character of that cause of action. For instance, a legislature could simply enact the definition of defamation from a source of black-letter law, such as the Second Restatement of Torts, and thereby convert the common law tort of defamation into a statutory cause of action without changing the nature of the tort.[11]

The court of appeals also held that the enforcement of section 5–5–108 "is not dependent upon proof of any common law tort." *Id.* While this is true, it ignores the question of whether an action under section 5–5–108 might be *"in the nature* of defamation." We have recognized that "[a]t common law, the tort of defamation existed to redress and compensate individuals who suffered serious harm to their reputations due to the careless or malicious communications of others." *Keohane v. Stewart,* 882 P.2d 1293, 1297 (Colo.1994). Here, Shaw's action against Discover is based solely on subsection 5–5–108(4)(d)(IV), which prohibits unconscionable debt collection practices which

> cause *injury to the debtor's reputation or economic status* by ... [d]isclosing information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact.

§ 5–5–108(4)(d)(IV), 2 C.R.S. (1992) (emphasis added). This subsection of the statute addresses debt collection practices which cause injury to a consumer's economic reputation due to a debt collector's careless or malicious communications to others. The subsection thus proscribes a specific type of defamation: defamation by false credit reporting. *Cf. Keohane,* 882 P.2d at 1297.

---

11. Some state legislatures have enacted the tort of defamation into their legal codes. *See* Ga. Code Ann. §§ 51–5–1 to –4 (Michie 1982 & Supp. 1996); Mont.Code Ann. §§ 27–1–801 to –803 (1995); Okla. Stat. Ann. tit. 12, §§ 1441 to –1442 (West 1993); S.D. Codified Laws §§ 20–11–1 to – 4 (Michie 1995); Tex. Civ. Prac. & Rem.Code § 73.001 (1993).

Finally, the court of appeals held that section 5–5–108 requires a consideration of numerous factors to determine whether a creditor's actions have been unconscionable. We agree that a claim under section 5–5–108 which presents numerous factors to consider in determining whether a creditor's debt collection practice is unconscionable would not be in the nature of defamation. However, Shaw's claim presents only one factor to consider: injury to reputation by failing to disclose that the debt was disputed when reporting the debt to credit reporting agencies. § 5–5–108(4)(d)(IV). This single factor is in the nature of defamation. An action which alleges only this one factor as an unconscionable debt collection practice is an action in the nature of defamation.

We conclude that the court of appeals erred in determining that Shaw's claim was not "in the nature" of defamation and therefore not subject to the preemptive provisions of § 1681h(e) of the FCRA, because Shaw's claim is based solely on subsection 5–5–108(4)(d)(IV).

### B.

Although § 1681h(e) preempts state actions in the nature of defamation, it specifically exempts actions based on "false information furnished with malice or willful intent to injure [the] consumer." Shaw alleged that Discover's conduct was "willful, wanton, malicious, unconscionable, and outrageous." Discover denied any such conduct in its answer. By granting Discover's motion for summary judgment without comment, the trial court did not specifically address whether Discover had produced some evidence that it lacked malice or willful intent, or whether Shaw had produced any contrary evidence to put the matter into dispute. By holding that the FCRA did not preempt Shaw's action, the court of appeals likewise did not address this issue in its opinion.

█ Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1339–40 (Colo.

1988). The moving party has the initial burden to show that there is no genuine issue of material fact. *See Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo.1987). However, once the moving party has met its initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *See Ginter v. Palmer,* 196 Colo. 203, 206, 585 P.2d 583, 585 (1978). The nonmoving party "must receive the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts." *Tapley v. Golden Big O Tires,* 676 P.2d 676, 678 (Colo.1983). All doubts as to whether an issue of fact exists must be resolved against the moving party. *See Dominguez v. Babcock,* 727 P.2d 362, 365 (Colo. 1986). Even if it is extremely doubtful that a genuine issue of fact exists, summary judgment is not appropriate. *See Abrahamsen v. Mountain States Tel. & Tel. Co.,* 177 Colo. 422, 428, 494 P.2d 1287, 1290 (1972). Moreover, because neither party has disputed the competence or admissibility of the evidentiary materials offered in support of and in opposition to the summary judgment motion, we may consider all of this record evidence in our analysis. *Cf.* C.R.C.P. 56(e).

█ The triable issue in this case is not whether Discover disclosed false, defamatory information to consumer reporting agencies. Because § 1681h(e) preempts Shaw's claim in the nature of negligent defamation, the issue is whether Discover defamed Shaw with malice or willful intent. Cases interpreting the term "malice" in § 1681h(e) have borrowed the definition used in other federal caselaw dealing with defamation: knowledge that a statement is false or reckless disregard for whether a statement is false or not. *See Thornton v. Equifax, Inc.,* 619 F.2d 700, 705 (8th Cir.1980) (citing *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964)).

Subsection 5–5–108(4)(d)(IV) requires that when a debt collector discloses information concerning the existence of a debt known to be disputed by the debtor, it must also disclose the fact that the debt is disputed. It is this failure to acknowledge the fact of the dispute which may be defamatory. If Dis-

cover failed to disclose Shaw's dispute, without malice or willful intent to injure, when it communicated information about the alleged debt to credit reporting agencies, then Discover would enjoy qualified immunity under the FCRA for any defamation. Only if Discover failed to report the dispute with malice or willful intent to injure can Shaw's claim under subsection 5–5–108(4)(d)(IV) avoid preemption and survive summary judgment. Hence, the disputed factual issue presented is whether Discover acted with malice or willful intent to injure when it reported the debt without reporting that the debt was disputed.

The record reveals that after Shaw's attorney wrote to Discover about the dispute, Discover reported to Equifax that Shaw still owed the disputed $1219 debt. This entry in Shaw's credit report includes the notation "charged off account." Discover later instructed these credit reporting agencies to delete Shaw's "name [from the debt as] the result of [a] legal settlement."

These documents are highly ambiguous. There is no competent evidence of record which reveals what the "charged off account" notation in Shaw's consumer credit report actually means. Likewise, a number of inferences could be drawn from Discover's instruction to delete Shaw's name due to a "legal settlement."

When taken in the light most favorable to Shaw, however, this evidence suggests that Discover actually knew about Shaw's dispute but nonetheless reported the debt to Equifax without disclosing the dispute. It may be inferred from the "charged off account" notation that an undisputed debt could not be collected. Also, the "legal settlement" notation on the universal data form could raise an inference that Shaw acknowledged the existence or validity of the debt when Discover knew that Shaw had done no such thing. These disclosures fail to communicate the fact of Shaw's dispute. The repeated failure to disclose that the debt is disputed, after being so advised, raises a genuine dispute as to whether Discover acted with malice as defined in § 1681h(e). We conclude that the trial court erred in entering total summary judgment in favor of Discover.

We express no opinion as to whether these alleged violations of subsection 5–5–108(4)(d)(IV) actually injured Shaw's reputation, or whether these alleged violations of this one narrow subsection, by themselves, are sufficient to constitute an unconscionable debt collection practice which entitles Shaw to relief under the statute.[12] We merely hold that these allegations may fit within the "malice" exception to § 1681h(e), in which case they will not be preempted by the FCRA and must survive Discover's motion for summary judgment.

## IV.

We conclude that the federal Fair Credit Reporting Act applies to this case because the claim is based solely on information which Discover disclosed to consumer reporting agencies as an injury to Shaw's credit

---

**12.** Section 5–5–108, 2 C.R.S. (1992) is derived from the 1974 Uniform Consumer Credit Code Act. *See* 7A Uniform Laws Annotated § 5.108 (West 1985). The official comment states that the statutory language is meant to incorporate unconscionability principles from the Uniform Commercial Code. The goal is to prevent "oppression and unfair surprise" in consumer credit transactions, a standard which is extremely fact-sensitive. *Id.* cmt. 3.

We have found no cases where courts have found violations of subsection 5–5–108(4)(d)(IV) alone to constitute unconscionable conduct, although courts have found unconscionability where a subsection 5–5–108(4)(d)(IV) violation existed in combination with other factors enumerated in the statute. *See Peters v. Collision Clinics Int'l, Inc.*, 404 So.2d 116 (Fla.Dist.Ct. App.1981) (automobile repair shop sent letter to employer that employees had failed to pay their bills without also disclosing that bills were disputed; conduct violated various provisions of Florida's version of § 5.108, including provision prohibiting the disclosure of a debt without disclosing the fact that the debt is disputed); *State v. Valleta*, 108 Misc.2d 603, 438 N.Y.S.2d 187 (N.Y.Sup.Ct.1981) (creditor sent debtor a letter threatening to: collect unwarranted delivery, service and pickup costs for defective television; turn debtor over to attorney whose brother was a judge; collect further court costs and fees from litigation; and send debtor's name in to a credit reporting bureau. The letter violated New York's version of § 5.108, including provision prohibiting the threat of disclosure of a debt without disclosing the fact that the debt is disputed).

reputation. The court of appeals erred in holding that claims under section 5–5–108, 2 C.R.S. (1992), cannot be "in the nature of defamation". Because Shaw's claim under subsection 5–5–108(4)(d)(IV) is in the nature of defamation, it is subject to preemption by § 1681h(e) of the federal Fair Credit Reporting Act. However, there is evidence which suggests that Shaw's claim may fall under the "malice" exception to preemption provided in § 1681h(e), which precludes total summary judgment for Discover on the basis of federal preemption.

Therefore, summary judgment was properly entered to the extent that Discover's failure to disclose that the debt was disputed was without malice or willful intent to injure. Such a failure may not be considered as a factor to determine whether it was an unconscionable debt collection practice. Summary judgment was not properly entered to the extent that Discover's failure to disclose that the debt was disputed was with malice or willful intent to injure.

We therefore return this case to the court of appeals for remand to the district court for further proceedings on Shaw's state statutory claim. Upon remand, the court shall determine whether Discover's failure to report the dispute was with malice or willful intent to injure. If so, the court shall determine whether this conduct injured Shaw's reputation so as to constitute an unconscionable debt collection practice.

VOLLACK, C.J., concurs in part and dissents in part, and SCOTT, J., joins in the concurrence and dissent.

SCOTT, J., concurs in part and dissents in part, and VOLLACK, C.J., joins in the concurrence and dissent.

Chief Justice VOLLACK concurring in part and dissenting in part:

The majority affirms the court of appeals and holds that the trial court erroneously entered summary judgment against the plaintiff, Valerie Shaw (Shaw). The majority also reverses the court of appeals and holds that section 5–5–108, 2 C.R.S. (1992), is preempted by 15 U.S.C. § 1681h(e) (1994) of the Fair Credit Reporting Act (FCRA). I

agree with the majority's conclusion that the trial court erred in granting the motion for summary judgment filed by Greenwood Trust Company, doing business as Discover Card Finance Services (Discover). However, I disagree with the majority's conclusion that section 5–5–108 is preempted by § 1681h(e) because I believe that the cause of action set forth in section 5–5–108 is separate and distinct from a common law defamation claim. I would therefore affirm the decision of the court of appeals in its entirety. Accordingly, I dissent in part and concur in part.

I.

This case concerns a disputed credit card debt. Discover claims that Shaw owes $1,219 on her Discover card, but Shaw maintains that she never applied for, possessed, or made any charges with the Discover card. As a result of the alleged unpaid debt, Discover notified several credit report agencies that the debt was past due and that the account had a poor credit rating. Shaw filed suit, asserting that Discover's actions violated section 5–5–108. Discover responded and subsequently filed a motion for summary judgment in which it claimed qualified immunity pursuant to § 1681h(e). The trial court granted the motion for summary judgment without explanation. The court of appeals reversed, holding that § 1681h(e) did not grant Discover any level of immunity from Shaw's section 5–5–108 claim and that Shaw's 5–5–108 claim was improperly dismissed. See Conley v. Greenwood Trust Co., 923 P.2d 307, 309 (Colo.App.1996).

II.

Under the Supremacy Clause of the United States Constitution, federal law may preempt state legislation governing the same subject matter. See U.S. Const. art. VI, cl. 2; Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986); Amoco Oil Co. v. Ervin, 908 P.2d 493, 503 (Colo.1995). Preemption occurs if Congress expressly states its intent to preclude state regulation of a subject. See Louisiana Pub. Serv. Comm'n, 476 U.S. at 368, 106 S.Ct. at 1898; Banner Advertising,

*Inc. v. City of Boulder,* 868 P.2d 1077, 1080 (1994). In the absence of express congressional intent, state law is preempted if it actually conflicts with federal law or if federal law thoroughly occupies a legislative field. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992); *Amoco Oil,* 908 P.2d at 503. A court must presume that the historic police powers of the States are not to be superseded by a federal statute absent a clear and manifest purpose of Congress. *See Cipollone,* 505 U.S. at 518, 112 S.Ct. at 2618; *Banner,* 868 P.2d at 1080–81.

As the official comment to section 5–5–108 suggests, section 5–5–108 seeks to measure and ensure that businesses use acceptable conduct when they deal with consumers. § 5–5–108, 2 C.R.S. (1992), official cmt. Section 5–5–108 provides in pertinent part:

> (2) With respect to a consumer credit transaction, *if the court as a matter of law finds that a person has engaged in, is engaging in, or is likely to engage in unconscionable conduct in collecting a debt arising from that transaction, the court may grant an injunction and award the debtor any actual damages he has sustained.*
>
> . . . .
>
> (4) In applying subsection (2) of this section, *consideration shall be given to each of the following factors, among others, as applicable:*
>
> . . . .
>
> (d) Causing or threatening to cause injury to the debtor's reputation or economic status by:
>
> (I) Disclosing information affecting the debtor's reputation for credit worthiness with knowledge or reason to know that the information is false;
>
> . . . .
>
> (IV) Disclosing information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact[.]

(Emphasis added.)

In contrast to the state statute, the FCRA is more specifically aimed at regulating the use of information obtained and disseminated by consumer reporting agencies. *See* 15 U.S.C. § 1681 (1994). Section 1681h(e) of the FCRA provides in pertinent part that

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any . . . person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

Any preemption analysis concerning section 1681h(e) of the FCRA is constrained by 15 U.S.C. § 1681t (1994), which provides that the FCRA

> does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

The majority concludes that Shaw's cause of action is based upon section 5–5–108(4)(d)(IV), which, the majority claims, essentially proscribes a claim of defamation by false credit reporting. Maj. op. at 1148. The majority then holds that Shaw's cause of action is "in the nature of defamation" and is therefore preempted by § 1681h(e) of the FCRA. Maj. op. at 1149. In my view, Shaw's cause of action concerns the enforcement of a statutory right separate and apart from an action alleging defamation. Given the expressly limited congressional intent to preempt in this area and the fundamental differences that exist between the action set forth in section 5–5–108 and the tort of defamation, I would hold that Shaw's statutory cause of action is not preempted.

The central issue in determining whether a creditor has violated section 5–5–108(2) is whether the creditor has acted unconscionably towards the debtor during a consumer credit transaction. *See* § 5–5–108(2). The factors contained in section 5–5–108(4) do not prohibit any conduct on the part of the creditor and do not codify the elements of defamation. Instead, the factors set forth in section

5-5-108(4) illustrate the types of conduct that may be deemed unconscionable by a court of law. The unconscionability determination, which typically addresses an area of contract law, is distinct and separate from an action alleging defamation, which requires a different focus and the consideration of additional elements.[1] For this reason, I believe that the court of appeals correctly explained that

> an action under § 5-5-108 is not an action "in the nature of defamation [or] invasion of privacy"; it is an action to enforce a statutory right. And, its enforcement is not dependent upon proof of any common law tort. Rather, it requires a consideration of numerous factors to determine whether a creditor's actions have been unconscionable.

*Conley,* 923 P.2d at 309 (alteration in original).

Clearly, there are stark differences between the cause of action set forth in section 5-5-108 and a defamation claim which demarcates two separate causes of action. Because the two causes of action are separate and distinct from one another, there is no inconsistency pursuant to § 1681t. Therefore, preemption of Shaw's section 5-5-108 claim is unwarranted in the present case.

### III.

Shaw abandoned her common law defamation claim prior to presenting her case to the court of appeals. Therefore, her cause of action is based solely upon section 5-5-108. In my view, a cause of action brought pursuant to section 5-5-108 is fundamentally different from a tort claim alleging defamation. When the distinguishing features are viewed in combination with § 1681t of the FCRA, which provides congressional intent to leave state regulatory statutes in this field intact, it becomes clear that Shaw's cause of action should be allowed to proceed. For this reason, I would affirm the court of appeals and

hold that section 5-5-108 is not preempted by § 1681h(e) of the FCRA. Accordingly, I concur with that part of the majority's opinion which holds that the trial court improperly entered summary judgment against Shaw and dissent to that part of the majority's opinion which holds that section 5-5-108 is preempted by § 1681h(e) of the FCRA.

I am authorized to say that Justice SCOTT joins in this concurrence and dissent.

Justice SCOTT concurring in part and dissenting in part:

I agree with the majority that section 5-5-108, 2 C.R.S. (1992), was adopted by the Colorado General Assembly to "prohibit[ ] unconscionable debt collection practices." Maj. op. at 1143. I also agree that Valerie L. Conley, now known as Valerie L. Shaw (Shaw), "commenced this action ... alleg[ing] that [Greenwood Trust Company (Discover)] provided false and defamatory credit information to consumer credit reporting agencies which ... caused her to lose credit opportunities." *Id.* at 1143. However, because in opposing Discover's motion for summary judgment Shaw continued to claim injury to her "economic status" and because such a claim, in my view, is not inconsistent with or in "outright or actual conflict" with the Federal Credit Reporting Act (FCRA), maj. op. at 1148, nor is it "an action solely for injury to reputation," *id.* at 1148, I must respectfully dissent from the majority's determination that state law is preempted.

In my view, under section 5-5-108, a trial court may issue an injunction, in the absence of actual damages, to enjoin future violations of section 5-5-108 and to prohibit what Shaw's complaint describes as a "continuing course of conduct." Moreover, I disagree with the majority's determination that Shaw's claim falls solely under subsection 5-5-108(4)(d)(IV). *See* maj. op. at 1142. While I write separately, I also join in Chief Justice

---

1. In Colorado, a plaintiff must prove the following elements in asserting a cause of action for defamation: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actiona-

bility of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *See Williams v. District Court,* 866 P.2d 908, 911 n. 4 (Colo.1993).

Vollack's separate opinion, concurring in part and dissenting in part.

## I.

The majority determines that "a claim solely under subsection 5–5–108(4)(d)(IV) is in the nature of defamation and is prohibited by 15 U.S.C. § 1681 to the extent that malice or willful intent to injure is absent." Maj. op. at 1142. In my view, the majority mischaracterizes the defendant's complaint by limiting it to falling "solely under subsection 5–5–108(4)(d)(IV)." *Id.* In fact, paragraph eight of the complaint and jury demand filed on February 9, 1993, alleges that "Defendant's actions and omissions as herein alleged are actionable as a violation of § 5–5–108, C.R.S." (See complaint attached as Appendix A.) Furthermore, in Shaw's Response to Defendant's Motion for Summary Judgment (Response Motion), she relies on section 5–5–108 in its entirety rather than just the subsection (4)(d)(IV) upon which the majority focuses its analysis.

Thus, the majority improperly limits subsection (4)(d)(IV) to reputation despite the statute's clear mandate that "consideration shall be given to each of the [section 5–5–108(4)(d) ] factors, among others...." § 5–5–108(4), 2 C.R.S. (1992). Subsection (4)(d) requires consideration of acts that cause or threaten to cause injury to a consumer's economic status. Therefore, contrary to the majority's determination, reputation is not the only aspect of Shaw's claim. In failing to address the other aspects of Shaw's complaint, the majority, in effect, preempts not just that subsection, but allows its judgment to be read as applicable to all claims of action under section 5–5–108(2), as applied through consideration of the several factors in subsection 5–5–108(4).

In Shaw's Response Motion, she lists the acts and omissions that support her argument that Discover knowingly furnished false credit information. The list of acts includes "[c]ausing or threatening to cause injury to Plaintiff's reputation or economic status in violation of § 5–5–108(4)(d)(I),(III) and (IV)." It is important to note that before the trial court, Shaw claimed injury to her reputation *and* her economic status. In my opinion,

defamation is an action for injury to reputation only. Even if Shaw's claim for injury to reputation was in the nature of defamation and prohibited by 15 U.S.C. § 1681, she would still have a permissible claim for injury to her economic status.

As a result, I do not agree with the majority's conclusion that Shaw's claim is prohibited by 15 U.S.C. § 1681. In my view, the majority is collapsing the law of our state into a federal cause of action. The majority decides to return the case to the trial court for consideration of "malice or willful intent to injure." Maj. op. at 1142. This language does not appear in section 5–5–108. I cannot support the majority's decision to equate a state law claim under section 5–5–108 for injury to economic status with the FCRA defamation claim requiring a showing of willful and wanton conduct because proving such conduct subjects plaintiffs to an unnecessarily high standard without any statutory authority for doing so.

## II.

In *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo.1994), we held that "[d]efamation is a communication that holds an individual up to *contempt* or *ridicule*. ..." (Emphasis added.) In *Keohane*, we further stated that "'[a]t common law, the tort of defamation existed to redress and compensate individuals who suffered *serious harm to their reputations* due to the careless or malicious communications of others.'" Maj. op. at 1148 (quoting *Keohane*, 882 P.2d at 1297) (emphasis added). "Additionally, defamatory statements are *so egregious and intolerable* because the statement [sic] *destroys* an individual's reputation: a characteristic which cannot be bought, and one that, once lost, is extremely difficult to restore." *Keohane*, 882 P.2d at 1298 (emphasis added). In footnote six, Justice Erickson, writing for the majority, aptly notes Chief Justice Rehnquist's reference to *Othello*, act III, scene 3:

Good name in man and woman, dear my lord,
Is the immediate jewel of their souls.
Who steals my purse steals trash;

'Tis something, nothing;

'Twas mine, 'tis his, and has been slave to thousands;

But he that filches from me my good name

Robs me of that which not enriches him,

And makes me poor indeed.

*Id.* (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 12, 110 S.Ct. 2695, 2702, 111 L.Ed.2d 1 (1990)).

Here, as the majority concedes, "Shaw commenced this action ... [and] alleged that Discover provided false ... credit information to consumer credit reporting agencies which ... caused her to lose credit opportunities...." Maj. op. at 3. "Shaw alleged that Discover had injured her 'reputation or economic status' by 'disclosing information concerning the existence of a debt known to be disputed by the debtor without disclosing that fact.'" *Id.* at 9. These claims by Shaw, given fair reading under our rules of procedure that adopt notice and not form pleading, *see* C.R.C.P. 8(a)(2) & 9(b); *see also Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095, 1099–1100 (Colo.1995), do not suggest Shaw was held up to "contempt or ridicule," was caused to "suffer[ ] serious harm to [her] reputation[ ]," or that Discover made statements "so egregious and intolerable" so as to "destroy" Shaw's reputation. *Keohane,* 882 P.2d at 1297–98. In essence, like Chief Justice Vollack, I fail to see a defamation action. Nor, in my opinion, can one be constructed out of a statute designed not to create a cause of action "in the nature of defamation," but, rather, intended to establish a state public policy that protects citizens from unconscionable practices.

In essence, section 5–5–108 is designed to deter "unconscionable conduct in collecting a debt" and authorizes courts to *"grant an injunction* and award ... any *actual* damages ... sustained." § 5–5–108(2) (emphasis added). However, it is not a statutory mechanism designed to thwart legitimate and sound business decisions, such as those properly made by a lender who rejects an unworthy applicant for a loan. No one, least not Shaw, suggests that the denial of a loan or other business decision amounts to or is tantamount to defamation. Without more, providing false credit information upon which

sound business decisions are made to deny credit or loans is similarly not defamation. Yet, following the majority's rationale to its natural conclusion, one is left to assume that a denial of credit, based on erroneous credit information, is, in fact, a publication that holds one up to "contempt or ridicule." Without more, I disagree.

I read section 5–5–108 to reach business conduct or decisions that affect the economic status and well-being of a consumer, but not the publication of statements "egregious and intolerable" so as to hold one up to "contempt or ridicule." Under these facts, unlike the majority, I do not read Shaw's complaint to only claim injury to reputation. Moreover, I do not understand the General Assembly's adoption of the statute to authorize a civil action only in the nature of defamation. For example, ignoring any action to enjoin conduct, a plaintiff who, while interest rates are low, is denied credit based on the communication of false credit information, may bring an action for actual damages, i.e., the difference between what the plaintiff had to pay (in interest) for the loan later acquired and what she would have paid at the time she was denied credit illegally—but not to recover for serious harm to one's reputation. Where the false information is part of a continuing course of conduct without actual damages, I would expect a successful plaintiff is entitled to injunctive relief—even if the false information is not widely disseminated. Such a remedy would be especially appropriate where the defendant admits it engaged in the violative conduct but maintains its actions are immune or protected from any consumer's reach, as does Discover here. Simply stated, the unconscionable denial of credit, unlike defamation, does not act only to impugn one's reputation.

### III.

Finally, I do not doubt the power of Congress to enact legislation to prevent state regulation and hence, under the supremacy clause, to preempt state law. However, as we recently noted in *In re Marriage of Heupel,* 936 P.2d 561 (Colo.1997), " 'In the absence of an express congressional command, state law is pre-empted if that law actually

conflicts with federal law ... or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Heupel*, 936 P.2d at 564 (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 515, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992)).

Therefore, while I agree with the majority that "section 5–5–108 will be preempted only to the extent that it is in outright or actual conflict with the [Federal Credit Reporting Act]," maj. op. at 1147, I find no conflict in a state law designed to protect the public from unconscionable collection practices and a federal statute that prohibits, by its plain language, civil actions in the nature of defamation. While damages may not be the proper remedy where no injury to reputation or economic status is proved, I must note that the statute does permit injunctive relief to prevent future violations which are part of a continuing course of conduct.

I conclude, as did the court of appeals, that Shaw's complaint for "los[s] of credit opportunity" is not of a similar nature as a complaint "solely for injury of reputation."

### IV.

Accordingly, and for the reasons set forth in Chief Justice Vollack's concurrence in part and dissent in part, I agree that the trial court erroneously granted Discover's motion for summary judgment, and I respectfully dissent from that part of the majority's opinion which holds that section 5–5–108(4)(d)(IV) is preempted by the FCRA.

I am authorized to say that Chief Justice VOLLACK joins in this concurrence and dissent.

### APPENDIX A

DISTRICT COURT, COUNTY OF EL PASO, STATE OF COLORADO

Case No. 93CV0287 Division No. 6

---

**COMPLAINT AND JURY DEMAND**

---

VALERIE L. CONLEY, n/k/a

VALERIE L. SHAW Plaintiff

vs.

GREENWOOD TRUST COMPANY, d/b/a

DISCOVER CARD FINANCIAL SERVICES Defendant

---

Plaintiff, by and through her attorney, Richard C. Whaley, and for her Complaint states:

1. That at all times necessary to this action, Plaintiff was a resident of El Paso County, Colorado.

2. That at all times necessary to this action, the alleged acts and omissions of Defendant which form the basis of this Complaint took place in El Paso County, Colorado.

3. Upon information and belief, Defendant is a Delaware Corporation in good standing, conducting business in the State of Colorado.

4. Defendant has claimed that Plaintiff is indebted to it in the amount of $1,219.82 by virtue of its issuance of Discover Card # 6011–0096–9750–6066.

5. Defendant has been advised repeatedly that Plaintiff never applied for such card, never had such card in her possession, never used such card for any purpose whatsoever, and is not indebted to Defendant because of any credit extended by it for the use of such card by any person.

6. Despite such advisement and notice, Defendant repeatedly sent payment demand notices to Plaintiff, and threatened suit if Plaintiff did not pay the amount demanded of her. Further, Defendant has reported to various credit reporting agencies that it has charged off to its bad debt accounts the sum of $1,219.00 for non-payment of the said sum by Plaintiff.

7. That at all times relevant to the subject matter of this Complaint, Defendant knew that Plaintiff had no legal debt obligation to it on the subject Discover Card.

8. That Defendant's actions and omissions as herein alleged are actionable as a violation of § 5–5–108, C.R.S.

9. That the false, defamatory credit information remains in Plaintiff's credit file to this date, and as such constitutes a continuing course of conduct. Such conduct by Defendant was, and remains willful, wanton, malicious, unconscionable, and outrageous; and was done and continues to be done with the deliberate intent to cause severe, irreparable damage to Plaintiff's credit reputation.

10. As a direct and proximate result of Defendant's conduct as herein alleged, Plaintiff has suffered severe, irreparable damage to her credit reputation, lost credit opportunities, and mental and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her behalf and against Defendant in an amount to adequately compensate her for her damages, interest as provided by statute from the date the cause of action arose, exemplary damages, attorney's fees pursuant to § 5-5-108 C.R.S., costs of this action, and such other and further relief as to the Court may seem appropriate.

PLAINTIFF DEMANDS TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.

Respectfully submitted,
RICHARD C. WHALEY # 17134
Attorney for Plaintiff
411 So. Cascade Ave.
Colorado Springs, CO 80903
(719) 473-3232