David A. WOODWARD and Mary Ann Woodward, Plaintiffs–Appellants,

v.

BOARD OF DIRECTORS OF TAMARRON ASSOCIATION OF CONDOMINIUM OWNERS, INC., Edward J. Louden, Jr., and Louise Louden, Defendants–Appellees.

No. 05CA0457.

Colorado Court of Appeals, Div. II.

Feb. 8, 2007.

Rasure & Associates, C. William Rasure, Jr., Durango, Colorado, for Plaintiffs–Appellants.

Casey & Seibert, LLC, John C. Seibert, Durango, Colorado, for Defendant–Appellee Board of Directors of Tamarron Association of Condominium Owners, Inc.

McLachlan & Whitley, LLC, Michael E. McLachlan, Marla C. Underell, Durango, Colorado, for Defendants–Appellees Edward J. Louden, Jr. and Louise Louden.

Opinion by Judge LOEB.

Plaintiffs, David A. Woodward and Mary Ann Woodward, appeal the summary judgment in favor of defendants, the Board of Directors of the Tamarron Association of Condominium Owners, Inc. (TACO), Edward J. Louden, Jr., and Louise Louden. The Woodwards also appeal the orders awarding defendants attorney fees. We reverse and remand for further proceedings.

The Tamarron condominium complex is subject to recorded covenants set forth in the Amended Consolidated Declaration of Condominiums and Covenants, Conditions and Restrictions for the Condominiums at Tamarron. TACO is a nonprofit corporation that operates the condominium complex and enforces the covenants, including the approval of all architectural modifications to the interior and exterior of each condominium unit.

In February 2002, pursuant to the covenants, the Loudens submitted an application to TACO for approval of modifications to their condominium unit, # 853. The modifications were to open the blind wall that was adjacent to and in front of unit # 852, the unit owned by the Woodwards, by opening the side end of their deck and installing windows. The two units were offset so that the windows and deck opening would face the Woodwards' condominium at an angle.

On February 11, 2002, TACO approved the proposed modifications to the Loudens' condominium unit. It is undisputed that TACO's expressed basis for this approval was that, under TACO's policy, substantially similar modifications to other units in the complex had been approved in the past.

The Loudens proceeded to complete the modifications to the exterior of their condominium. After the Woodwards became aware of the modifications to the Loudens' unit, they wrote a letter to the Board. When they were unable to resolve their dispute with the Board and the Loudens, the Woodwards filed this action in district court, seeking damages and equitable relief. As pertinent to this appeal, the Woodwards' amended complaint alleged claims for breach of the TACO covenants and fiduciary duty against the Board, and a claim for nuisance against the Loudens and the Board. Specifically, they alleged that, as a result of the modifications, they had suffered an increase in light and noise entering into their unit and a loss of privacy.

The Board filed a motion to dismiss and for summary judgment, requesting that all the Woodwards' claims for relief be dismissed. The Loudens joined in that motion.

The district court granted defendants' motion for summary judgment and dismissed the Woodwards' complaint. Subsequently, the Board and the Loudens moved for an award of attorney fees and costs, and the district court granted the motions.

The Woodwards appeal the summary judgment as to their claims alleging breach of covenants and fiduciary duty against the Board, and as to the nuisance claims against all defendants. They also appeal the orders granting defendants' attorney fees.

## I. Standard of Review

Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. We review the grant of a summary judgment motion de novo. *W. Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002).

The moving party has the initial burden to show that there is no genuine issue of material fact. *Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1149 (Colo.1997). This bur-

den has two distinct components: an initial burden of production on the moving party, which burden when satisfied then shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987). When a party moves for summary judgment on an issue upon which the party would not bear the burden of persuasion at trial, the moving party's initial burden of production may be satisfied by showing an absence of evidence in the record to support the non-moving party's case. *Casey v. Christie Lodge Owners Ass'n*, 923 P.2d 365, 366 (Colo. App.1996). "[O]nce the moving party has met its initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact." *Greenwood Trust Co. v. Conley, supra*, 938 P.2d at 1149. Failure to meet that burden will result in summary judgment in favor of the moving party. *Casey v. Christie Lodge Owners Ass'n, supra*.

▆▆▆▆ The nonmoving party is entitled to any favorable inferences that may reasonably be drawn from the facts, and all doubts must be resolved against the moving party. *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 225–26 (Colo.2001). Even if it is extremely doubtful that a genuine issue of fact exists, summary judgment is not appropriate. *Greenwood Trust Co. v. Conley, supra*. When neither party disputes the competence or admissibility of evidence offered in support of and in opposition to the summary judgment motion, we may consider all this record evidence in our analysis. *Greenwood Trust Co. v. Conley, supra*. When the record is not adequate to permit a conclusion that no material fact dispute exists, the entry of summary judgment is inappropriate. *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759, 766 (Colo.1989). "[I]n considering the motion for summary judgment, the trial court must accept the plaintiffs' pleadings as true unless the depositions and admissions on file, together with the affidavits, clearly disclose there is no genuine issue as to any material fact, with any doubts being resolved in plaintiffs' favor." *Norton v. Leadville Corp.*, 43 Colo.App. 527, 530, 610 P.2d 1348, 1350 (1979). Moreover, while a party against whom a summary judgment is sought may take some risk by not submitting controverting affidavits or other evidence, nevertheless, if the moving party's proof does not itself demonstrate the lack of a genuine factual issue, summary judgment is inappropriate. *Wolther v. Schaarschmidt*, 738 P.2d 25, 28 (Colo.App.1986).

## II.  Breach of Covenants and Fiduciary Duty

The Woodwards contend that the district court erred in granting summary judgment on their claims for breach of covenants and fiduciary duty against the Board. We agree.

▆▆▆▆ A homeowners' association must use its authority to enforce protective covenants in good faith and in a reasonable manner. *Wilson v. Goldman*, 699 P.2d 420, 424 (Colo.App.1985). A homeowners' association has a fiduciary duty to homeowners to enforce restrictive covenants. "This duty has been imposed in recognition of the power held by homeowner[s'] associations, the quasi-governmental functions they serve, and the impact on value and enjoyment that can result from the failure to enforce covenants." *Colo. Homes, Ltd. v. Loerch–Wilson*, 43 P.3d 718, 722 (Colo.App.2001); *see Woodmoor Imp. Ass'n v. Brenner*, 919 P.2d 928, 933 (Colo.App.1996)(directors of homeowners' association had fiduciary duty to deal with utmost good faith, and duty to deal impartially with beneficiaries).

▆▆▆▆ A decision by a homeowners' association, for example, through its architectural control committee, approving or disapproving plans "must be reasonable and made in good faith and must not be arbitrary or capricious." *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 9, 449 P.2d 361, 363 (1969); *see Norris v. Phillips*, 626 P.2d 717, 719 (Colo. App.1980); *Rywalt v. Writer Corp.*, 34 Colo. App. 334, 526 P.2d 316 (1974). The parties agree that the legal test applicable here is whether the Board, in approving the Loudens' modifications, acted reasonably and in good faith and without being arbitrary and capricious.

The determination of whether the exercise of power by a homeowners' association has been reasonable or arbitrary is a factual question. *See La Vielle v. Seay,* 412 S.W.2d 587, 593 (Ky.1966). Moreover, issues of reasonableness and good faith are particularly unsuitable for summary judgment. *See Wheeler v. Eagle County,* 666 P.2d 559 (Colo. 1983); *Montoya v. Bebensee,* 761 P.2d 285 (Colo.App.1988).

The Woodwards contend that the Board breached the TACO covenants and its fiduciary duties in three respects: (1) by allowing the Loudens' modifications to be made without prior written approval of the Board; (2) by not giving the Woodwards prior notice of the Loudens' request for approval of the modifications; and (3) by allowing the Loudens to install a deck opening and windows different both from the design submitted in the plans and from other modifications previously approved by the Board. We disagree as to the first two contentions but agree that summary judgment was inappropriate as to the third.

### A. Prior Written Approval

The Woodwards first contend that the Board breached the covenants and its fiduciary duties by failing to issue prior written approval of the Loudens' plans before the modifications were made.

Article 11.6 of the covenants provides, in pertinent part:

*Additions, Alterations or Decorations.* No exterior additions, alterations or decorations to any Building, walls or other structures may be made without prior written approval of the Board.

The bylaws of TACO provide in Article 4:

All of the powers and duties of the Association existing under the Condominium Ownership Act, the several Declarations of Condominium, Articles of Incorporation and these By-laws shall be exercised exclusively by the Board of Directors, its agents, contractors or employees, subject only to approval by apartment owners when such is specifically required.

The district court found:

There is simply no competent evidence before this Court, by affidavit or otherwise, to show that TACO acted unreasonably, in bad faith, or in an arbitrary and capricious fashion. The Court further agrees with Defendants' analysis of TACO's ability to establish procedures for approval of modifications by employees, approval by a majority of the Board by telephone, and notation of written approval on the plans as constituting compliance with the Covenants. Alternatively, the Court finds any deficiencies to have been mooted by the ratification on Feb. 19, 2004.

Here, the record reflects the following undisputed facts as to the Board's approval process in this case. The Loudens submitted their proposed plans to request approval of the exterior changes to the chief engineer for TACO. The chief engineer's duties included the review of proposed exterior changes to condominium units and the submission of such requests for approval to the Board. The chief engineer faxed copies of the plans to four of the seven Board members, including the president of the Board, on February 7, 2002. The four Board members discussed the plans by telephone and unanimously approved them, based on purportedly similar modifications having been approved and completed in the past. The president conveyed the Board's approval to the chief engineer on or about February 11, 2002. The chief engineer then made a written notation on the plans themselves, indicating the Board's approval.

We reject the Woodwards' contention that the process utilized by the Board here was insufficient to constitute written approval of the plans and thus was arbitrary and capricious. A majority of the Board approved the plans. While prior written approval of exterior alterations is required by Article 11.6 of the covenants, neither a particular form nor a particular recipient of the approval is specified. Further, there are no special provisions in the covenants or bylaws of TACO requiring a special meeting, notice to all Board members, or other specified procedures in relation to the approval of exterior alterations under Article 11.6. Indeed, Article 4 of the bylaws specifically allows the

powers of the Board to be exercised by its agents and employees. Here, the Board acted to approve the plans and delegated certain authority to the chief engineer in accordance with the bylaws, which, in our view, included making a written notation of the Board's approval on the plans.

We thus conclude that the evidence is undisputed that the Board provided prior written approval of the Loudens' plans and therefore did not act arbitrarily or capriciously in the procedure it employed to approve the plans. Accordingly, summary judgment was proper as to this aspect of the Woodwards' claims for breach of covenants and fiduciary duty. Because of our resolution of this issue, we need not address the propriety of the district court's alternative finding that any deficiencies in the written approval process were mooted by a subsequent ratification of the approval.

### B. Prior Notice to the Woodwards

■ We also reject the Woodwards' contention that the Board's failure to consult with them prior to approval of the Loudens' modifications was arbitrary and capricious.

The district court found that, at the time the Loudens submitted their plans, no provision in the covenants or bylaws required such notification, and that the subsequent adoption of a policy requiring such notification could not be read to require such notification retroactively.

Here, the evidence in the record is undisputed that there was no covenant, by-law, rule, or policy in place at the time the Loudens' plans were submitted for approval that required the Board to provide the Woodwards with notice of the proposed modifications. Further, we agree with the district court that TACO's adoption of a policy in June 2004, well after the Loudens' plans were approved, providing for notification to affected condominium owners, cannot be read to impose such a requirement on the Board retroactively. Indeed, the plain language of the new policy only provides that such notification to affected owners is discretionary rather than mandatory. Finally, the Woodwards have not cited any authority for their contention that the lack of prior notice here

was a breach of fiduciary duty by the Board, particularly where the covenants themselves did not require such notice.

Accordingly, because nothing in the record shows that the lack of prior notification to the Woodwards was arbitrary, capricious, or in bad faith, we conclude the district court did not err in granting summary judgment for the Board on this aspect of the Woodwards' claims for breach of covenants and fiduciary duty.

### C. Approval of the Loudens' Modifications

■ The Woodwards also contend that the Board's approval of the proposed modifications was arbitrary and capricious because the windows and deck opening, as constructed, were different from the modifications shown on the plans and were not the same as or substantially similar to windows and deck openings previously approved and installed in other units. We agree that there are genuine issues of material fact and that summary judgment was, therefore, inappropriate.

The record before the district court on this issue is as follows. In addition to the pleadings on file, the Board submitted affidavits from the chief engineer and the president of the Board, the plans for the Loudens' proposed modifications, photographs of the Loudens' installed windows and deck, and photographs of modifications to other units in the complex. In response, the Woodwards proffered an affidavit by Mr. Woodward, asserting, inter alia, that defendants' evidence did not establish that the Loudens' modifications, as constructed, were the same as other modifications approved in the past; that the modifications, as actually constructed, did not conform to the plans submitted by the Loudens; and that TACO's attorney had admitted in an e-mail to Mr. Woodward that the Loudens' modifications were to the Woodwards' detriment because a change was made to the "norm." However, Mr. Woodward's affidavit did not contain any evidence relating to modifications of other units.

The district court concluded:

Plaintiffs further assert that the windows as installed are much closer to their unit than other windows approved by the Board

and that the windows as installed are much larger than shown on the plans. While the windows manifestly are a different shape than approved by the plans, no measurements have been submitted to the Court. Further, TACO had knowledge of the windows as actually installed; thus, [the] Loudens were entitled to rely on TACO's approval of the windows. *See generally Woodmoor Imp. Ass'n v. Brenner, [supra,* 919 P.2d at 931]. Further, this still would not rise to the level of bad faith, unreasonableness, or arbitrary and capricious action.

It is undisputed that the Loudens' modifications were approved based on the Board's policy to approve modifications that were the same as or substantially similar to previous modifications. The issue here is whether the approval was consistent with that policy, given the parties' dispute whether the modifications were, in fact, the same as or substantially similar to other approved modifications. The Woodwards contend that the evidence submitted by defendants does not establish that the Loudens' modifications were the same as or substantially similar to their plans or to other modifications to other units. We agree and conclude that, on the record before us, such a determination must be made by the finder of fact. *See Kral v. Am. Hardware Mut. Ins. Co., supra; Wolther v. Schaarschmidt, supra.*

The record reflects that the plans called for four windows, which were each three feet wide, arranged in a rectangle. The lower two windows were to be three feet high, and the upper two windows were to be six feet high. It is undisputed that the windows, as actually constructed, are a different shape from the specifications in the plans and that the plans were not drawn to scale. The plans do not show the size of either the deck opening or the blind wall in which the windows were to be installed. Moreover, nothing in the record shows the actual size of either the windows or the deck opening, as constructed.

The record contains photographs of other units where either the deck has been opened on the side or one or more windows have been installed. However, a majority of the units pictured show installations with no adjoining unit, unlike the case here. Thus, it appears that none of those modifications to the other units would have had the negative effects on an adjoining unit alleged by the Woodwards here. A small number of the photographs of adjoining units show either a window or deck opening on the adjoining side, but give no indication of the size of the modification. Two installations pictured are end units that have both an installed window or windows and a deck opening on the adjoining side, but the photographs proffered by defendants do not reflect the size of the modifications.

The affidavits of the president of the Board and the chief engineer both state that it was TACO's policy, dating from 1998, to approve requests for exterior modifications if the proposed modifications were the same as or substantially similar to modifications approved in the past.

However, defendants' evidence does not establish that it is undisputed that the Loudens' modifications, as actually constructed, were the same as or substantially similar to those previously approved and installed in other units. Contrary to defendants' argument, it is simply not possible to conclude from the photographs alone whether the modifications to the Loudens' unit were substantially similar to what was proposed or to what had been previously approved and constructed.

Although the district court focused on the lack of evidence, such as measurements, from the Woodwards, it is sufficient for the non-moving party to demonstrate that the moving party's proffered evidence establishes that there is a triable issue of fact. *See Wolther v. Schaarschmidt, supra.*

Accordingly, we conclude the district court erred in granting summary judgment because a material issue of fact exists as to whether the modifications, as actually constructed, were the same as or substantially similar to the plans submitted by the Loudens and previously approved modifications on other units, and, therefore, as to whether the Board acted arbitrarily and capriciously in approving the plans based on its policy. *See*

*Wheeler v. Eagle County, supra; Rhue v. Cheyenne Homes, Inc., supra.*

## III. Nuisance

The Woodwards contend that the district court erred in granting defendants' motion for summary judgment on their claim that the Loudens' modifications were a private nuisance. We agree.

A claim for nuisance is predicated upon a substantial invasion of an individual's interest in the use and enjoyment of his or her property. *Hoery v. United States,* 64 P.3d 214, 218 (Colo.2003). Liability for nuisance may rest upon any one of three types of conduct: an intentional invasion of a person's interest; a negligent invasion of a person's interest; or conduct so dangerous to life or property and so abnormal or out of place in its surroundings as to fall within the principles of strict liability. Further, conduct constituting a nuisance may include indirect or physical conditions created by a defendant that cause harm. *Hoery v. United States, supra.*

"The essential question to be resolved when a private nuisance is claimed is whether the defending party has unreasonably interfered with the claimant's use and enjoyment of his property. The interference which occurs must also be substantial in its nature as measured by a standard that it would be of definite offensiveness, inconvenience, or annoyance to a normal person in the community." *Northwest Water Corp. v. Pennetta,* 29 Colo.App. 1, 3–4, 479 P.2d 398, 400 (1970) (citation omitted); *see Allison v. Smith,* 695 P.2d 791, 794 (Colo.App.1984).

The question of unreasonableness is an issue of fact and should be left to the determination of the trier of fact. *Pub. Serv. Co. v. Van Wyk,* 27 P.3d 377, 391 (Colo.2001). "The unreasonable and substantial interference tests ... necessarily include a consideration whether the questioned activity is reasonable under all the surrounding circumstances." *Allison v. Smith, supra,* 695 P.2d at 794. "In making any determination of unreasonableness, the trier of fact must weigh the gravity of the harm and the utility of the conduct causing that harm." *Pub.*

*Serv. Co. v. Van Wyk, supra,* 27 P.3d at 391. In determining whether an invasion is substantial and unreasonable, the court must look at the character of the neighborhood, the magnitude, frequency, or duration of the defendant's activity exceeding neighborhood norms, and utility of the activity. Dan B. Dobbs, *The Law of Torts* § 465, at 1326–30 (2000), *cited in Pub. Serv. Co. v. Van Wyk, supra,* 27 P.3d at 395.

Here, the district court stated in its order:

It is true that the question of unreasonableness is an issue of fact.... Here, however, the facts are undisputed as set forth above.... Here, the Court finds that the installation of a deck opening and windows is not so significant or unreasonable as to constitute a nuisance, as it is not an activity that a normal person in the community would find offensive, annoying, or inconvenient.... Further such modifications do not constitute an actual invasion. *See generally Northwest Water Corp. v. Pennetta, [supra]* (loss of view does not by itself make a structure a nuisance). Reported cases all deal with some actual entry onto the property by noise, energy, or physical substances. *See Van Wyk [supra]* (noise levels and electromagnetic fields); *Lowder v. Tina Marie Homes, Inc.,* 43 Colo.App. 225, 226, 601 P.2d 657, 658 (... 1979) (drifts of windblown soil); and *Pennetta [supra]* (noise and vibration).

Based on the record before us, we conclude the district court improperly granted summary judgment for defendants on the Woodwards' nuisance claim.

Paragraph 13 of the Woodwards' amended complaint alleged:

The opening of the deck and the installation of the windows allow the occupants of Loudens' condominium to see directly into the deck and interior of plaintiffs' condominium, thereby destroying the privacy previously enjoyed by plaintiffs. The windows and deck opening have also allowed an increase in light and noise emanating from the Louden condominium unit to enter into plaintiffs' unit, interfering with the peaceful possession and use of plaintiffs' condominium unit.

In their nuisance claim, the Woodwards further alleged:

33. Defendant Loudens' actions constitute the creation and perpetuation of a nuisance being visited upon Plaintiffs' property.

34. The TACO Board's actions as set forth above constitute the creation, perpetuation and ratification of a nuisance being visited upon Plaintiffs' property.

35. Plaintiffs have been damaged by said nuisance....

Mr. Woodward's affidavit stated: "Defendants' actions have visited a nuisance upon our unit and have prevented us from the quiet enjoyment of our property." His affidavit continued: "The location and situation of the unit I purchased at Tamarron played a major role in our choosing and purchasing said unit. Had the Loudens' unit contained the open deck and windows as currently exist, we would have never purchased our unit."

The Board acknowledges that the Loudens' deck opening and windows "may be larger than some," but argues that the Woodwards failed to provide any evidence in support of their allegations in response to the Board's motion for summary judgment. The Loudens assert that their modifications were not irregular and annoying, but were in keeping with prevalent community standards.

However, these arguments, like the conclusion of the district court, are predicated on the assumption that the modifications to other units were the same as or substantially similar to those to the Loudens' unit, which we have concluded is a disputed issue of material fact. Because it is disputed whether the modifications were the same or substantially similar, it is also disputed whether the effect of the deck opening and installed windows on the Woodwards' use and enjoyment of their unit was greater than the norm in the condominium community. We conclude that resolution of these disputed issues requires findings of fact that cannot be made on the current record, which simply does not permit the conclusion that, as a matter of law, the modifications did not meet the unreasonableness test for a nuisance.

Indeed, nothing in the record contradicts the allegations in the amended complaint that interference with the Woodwards' use and enjoyment of their property was substantial, because of the imposition of increased light and noise and the loss of privacy.

We reject the Board's argument that the district court correctly ruled that, as a matter of law, the modifications here do not constitute an actual invasion. To the contrary, the cases cited by the district court acknowledge that noise can be a nuisance. *See Pub. Serv. Co. v. Van Wyk, supra; Northwest Water Corp. v. Pennetta, supra; see also Baum v. Coronado Condo. Ass'n,* 376 So.2d 914 (Fla.Dist.Ct.App.1979) (court found nuisance where noises from uncovered terrazzo corridor above condominium unit disturbed the owner of the unit); *Keane v. Pachter,* 598 N.E.2d 1067 (Ind.Ct.App.1992) (owner of condominium unit successfully brought nuisance action against owners of upstairs unit based on increased noise level resulting from installation of marble tile). Further, no Colorado cases have been cited to us, nor have we found any, holding that invasion of light or loss of privacy cannot, as a matter of law, constitute a nuisance. *See O'Neil v. Atwell,* 73 Ohio App.3d 631, 598 N.E.2d 110 (1991)(where condominium unit owner filed suit against owner of contiguous unit for construction of large deck, court found that the deck, which compromised privacy and interfered with the view, use, and enjoyment of the plaintiff's property, constituted a nuisance under Ohio law).

In *Northwest Water Corp. v. Pennetta, supra,* the case was remanded for a trial to determine whether a water tank's noise and shadow were a nuisance. And in *Public Service Co. v. Van Wyk, supra,* the case was remanded to the district court to evaluate whether the noise, radiation, and electromagnetic fields of a power line were unreasonable and, therefore, a nuisance. We have not found any Colorado appellate opinion in a case alleging a private nuisance, nor has one been cited to us, that affirms a summary judgment on the factual issue of whether the alleged intrusion was unreasonable and substantial.

Accordingly, we conclude that, because the Woodwards' nuisance claim presents genuine issues of material fact, summary judgment on that claim was improperly granted. *See W. Elk Ranch, L.L.C. v. United States, supra.*

### IV.  Attorney Fees

The Woodwards also contend the district court erred in awarding attorney fees and costs to defendants. We conclude that, given our resolution of the issues presented on appeal, the district court's orders on attorney fees cannot stand. *See Ashton Props., Ltd. v. Overton,* 107 P.3d 1014, 1018–19 (Colo.App. 2004); *In re Marriage of Paul,* 978 P.2d 136 (Colo.App.1998)(if underlying judgment is reversed, award of attorney fees must be likewise reversed).

The judgment and orders are reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

Judge ROTHENBERG and Judge TERRY concur.