J.C. and C.C., individually and as birth parents on behalf of M.C., a minor, Plaintiffs–Appellants,

v.

DUNGARVIN COLORADO, LLC, a Minnesota corporation; Dungarvin Colorado, Inc., a Colorado corporation; Carmel Community Living Corporation, a Colorado corporation; The Resource Exchange, a Colorado corporation, Defendants–Appellees.

No. 09CA1290.

Colorado Court of Appeals, Div. II.

Aug. 5, 2010.

Jeffrey James Colerick, P.C., Jeffrey James Colerick, Colorado Springs, Colorado, for Plaintiffs–Appellants.

The Waltz Law Firm, Richard A. Waltz, K. Brandon Cline, Denver, Colorado, for Defendants–Appellees Dungarvin Colorado, LLC and Dungarvin Colorado, Inc.

Kane Law Firm, P.C., Mark H. Kane, Colorado Springs, Colorado, for Defendant–Appellee Carmel Community Living Corporation.

Rothgerber Johnson & Lyons LLP, Theresa L. Sidebotham, L. Martin Nussbaum, Colorado Springs, Colorado, for Defendant–Appellee The Resource Exchange.

Opinion by Judge BOORAS.

In this negligence action, plaintiffs, J.C. and C.C., individually and on behalf of M.C., appeal the district court's summary judgment in favor of defendants, Dungarvin Colorado, LLC (Dungarvin, LLC), Dungarvin Colorado, Inc. (Dungarvin, Inc.), Carmel Community Living Corporation (Carmel), The Resource Exchange (TRE), and Daniel A. Barriera. We affirm.

## I. Factual Background

Defendants provided residential and day services to a person with developmental disabilities who was also a juvenile sexual offender (D.C.). Defendants incorporated restrictions in their supervision plan for D.C. based on his status as a juvenile sex offender until he reached age twenty-one, at which time it appears his juvenile records were expunged.

Shortly before D.C. turned twenty-one, the age at which he became too old to remain in the foster care system, he was placed in a host home. Plaintiffs allege that, after D.C. turned twenty-one, he sexually assaulted M.C. at a church-sponsored social event at a residence on July 4, 2006. Plaintiffs filed suit, claiming that TRE, Dungarvin, Inc., Carmel, and Barriera negligently failed to properly supervise D.C., and that they negligently failed to warn plaintiffs about his history of committing sexual offenses.

In separate orders, the district court granted summary judgment in favor of TRE, Dungarvin, Inc., Carmel, and Barriera, finding that they were service "providers" as defined in section 13–21–117.5(2)(f), C.R.S. 2009, and thus immune from liability under section 13–21–117.5(4) and (6), C.R.S.2009.

Dungarvin, Inc. was the predecessor corporate entity to Dungarvin, LLC. Plaintiffs moved to join Dungarvin, LLC after the district court granted summary judgment in favor of Dungarvin, Inc. The court granted plaintiffs' motion. Dungarvin, LLC moved for summary judgment, which the court granted. The court concluded that Dungarvin, LLC, like the other defendants, was immune from liability as a provider.

## II. Standard of Review

We review de novo the district court's summary judgment ruling. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995). Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions in the record establish that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *see also Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo.App.2005).

■ The party moving for summary judgment has the burden to show that there is no genuine issue of material fact. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987); *Woodward v. Bd. of Directors of Tamarron Ass'n of Condo. Owners, Inc.*, 155 P.3d 621, 623 (Colo.App.2007). The movant's burden has two components: an initial burden of production, which, when satisfied, shifts to the nonmoving party to establish that there is a triable issue of fact, and an ultimate burden of persuasion, which remains on the moving party. *Woodward*, 155 P.3d at 624.

### III. Statutory Overview

The General Assembly has explained the purpose of the statutory scheme that grants immunity from liability to providers of services to persons with developmental disabilities:

[P]roviders to [developmentally disabled] persons are exposed to risk of liability when they assist or permit persons with developmental disabilities to experience community integration, participation, and self-direction; [and] [providers] provide essential services and functions and ... unlimited liability could disrupt or make prohibitively expensive the provision of such essential services....

[I]t is the intent of the general assembly to mitigate the risk of liability to providers to the developmentally disabled to the extent that such mitigation is reasonable and possible.

§ 13–21–117.5(1)(a)(III)–(IV), (b), C.R.S. 2009.

To effectuate this purpose, section 13–21–117.5(6) provides, in pertinent part:

A provider shall not be liable for damages in any civil action for failure to warn or protect any person against the violent, assaultive, disorderly, or harassing behavior of a person with a developmental disability, nor shall any such provider be held civilly liable for failure to predict or prevent such behavior, except there shall be a duty to warn where the person with the developmental disability has communicated to the provider a serious and credible threat of imminent physical violence and serious bodily injury against a specific person or persons.

A "provider" for purposes of section 13–21–117.5, C.R.S.2009 is:

any community centered board, service agency, host home, family provider, and the directors, officers, and employees of these entities, who provide services or supports to persons with developmental disabilities pursuant to article 10.5 of title 27, C.R.S.

§ 13–21–117.5(2)(f).

A "service agency" means:

a privately operated program-approved service agency designated pursuant to the rules of the [Department of Human Services].

§ 13–21–117.5(2)(g), C.R.S.2009.

Thus, "providers," as defined by section 13–21–117.5(2)(f), are not liable to third parties for the torts of the developmentally disabled persons they serve, unless a developmentally disabled person communicates to the provider a serious and credible threat of imminent physical violence and serious bodily injury against a specific person or persons. In that case, the provider has a duty to warn the threatened person or persons, and section 13–21–117.5(6) does not grant the provider immunity from liability if it fails to do so.

Furthermore, the provision of services to a person with developmental disabilities does not impose upon a provider a duty of care with respect to third persons, unless expressly imposed by federal or state law. § 13–21–117.5(4).

### IV. Discussion

#### A. Providers

Plaintiffs do not dispute that TRE, Dungarvin, Inc., and Barriera were "providers," as defined by section 13–21–117.5(2)(f). However, plaintiffs contend that the district

court erroneously concluded, as a matter of law, that Dungarvin, LLC and Carmel were providers. We disagree.

Plaintiffs' argument is premised solely on their assertion that there was a genuine issue of material fact as to whether Dungarvin, LLC and Carmel were authorized by the Department to provide services to persons with developmental disabilities when the sexual assault allegedly occurred. However, plaintiffs failed to establish a triable issue of fact in the district court as to whether Dungarvin, LLC and Carmel were so authorized.

■ Dungarvin, LLC and Carmel attached to their motions for summary judgment affidavits supporting their assertions that they were authorized by the Department as "service agencies," a type of provider entitled to immunity from liability under section 13–21–117.5(6). Matthew Solano, Program Quality Director for the Department's Division for Developmental Disabilities (DDD), stated in his affidavit that Dungarvin, LLC was a "program-approved service agency" pursuant to statute and DDD rules, and that Dungarvin, LLC was authorized to provide services to persons with developmental disabilities when the sexual assault allegedly occurred. Robert Arnold, Carmel's president, stated in his January 9, 2009 affidavit that Carmel had been a program-approved service agency since 1991, and that it was authorized by the Department to provide services to persons with developmental disabilities.

When Dungarvin, LLC and Carmel met their initial burden to show that there was no genuine issue of material fact as to whether they were authorized by the Department to provide services to persons with developmental disabilities, the burden of establishing that there was a triable issue of fact shifted to plaintiffs. *Woodward*, 155 P.3d at 624. The district court concluded that plaintiffs failed to meet their burden. On appeal, plaintiffs fail to identify any evidence that they presented to the district court showing otherwise. We will not disturb the district court's judgment in these circumstances. *See Premier Farm Credit, PCA v. W–Cattle, LLC*, 155 P.3d 504, 519 (Colo.App.2006) (bare assertions unsupported by citations to specific evidence in record are not bases for overturning judgment).

## B. Immunity

Plaintiffs do not dispute the district court's conclusion that D.C. was a person with developmental disabilities, and that defendants provided services to him as such. Nor do plaintiffs allege that D.C. communicated to defendants a serious and credible threat of imminent physical violence and serious bodily injury against M.C. Thus, as providers, defendants were immune from liability for D.C.'s violent, assaultive, disorderly, or harassing behavior; they had no duty to warn M.C.; and they had no duty of care with respect to M.C. that arose from providing services to D.C. *See* § 13–21–117.5(4), (6).

■ Plaintiffs contend that, notwithstanding defendants' immunity from liability to third parties under sections 13–21–117.5(4) and (6), defendants owed a duty of care to M.C. and a duty to warn M.C. They contend that this duty arose because defendants were, at the time of the alleged sexual assault, providing services to D.C. under the standards and guidelines created by the Colorado Sex Offender Management Board (SOMB) pursuant to Colorado statutes governing the treatment and monitoring of sex offenders, and because defendants had previously provided services to D.C. under the SOMB guidelines. We disagree.

The district court concluded that defendants were not providing services to D.C. based on his status as a sex offender when the sexual assault allegedly occurred. Because plaintiffs presented no factual or legal support to the contrary to the district court, we will not disturb this conclusion. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n. 5 (Colo.1992) (arguments never presented to the trial court may not be raised for the first time on appeal).

Furthermore, the SOMB standards and guidelines plaintiffs cite, and the statutory scheme governing treatment and monitoring of sex offenders generally, concern sex offenders who are subject to the supervision of the criminal justice system. *See* §§ 16–11.7–101, 16–11.7–103(4)(b), C.R.S.2009. Plaintiffs

do not contend that D.C. was subject to the supervision of the criminal justice system when he sexually assaulted M.C. In fact, it appears that D.C.'s juvenile records were expunged before the sexual assault occurred. Moreover, the SOMB guidelines do not expressly impose upon a provider a duty of care with respect to third persons. *See* SOMB, *Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders* 67–68 (rev. Mar.2008), *as of August 5, 2010, available at* http://dcj.state.co.us/odvsom/sex_offender/SO_Pdfs/2008%20Adult%20Standards%20FINAL.pdf. Accordingly, we agree with the district court that the SOMB standards and guidelines did not apply to defendants, and they did not impose on defendants any duties as providers of services to sex offenders.

■ The remainder of plaintiffs' argument is that defendants' knowledge that D.C. was a juvenile sexual offender, and the fact that they incorporated restrictions in their supervision plan for D.C. based on his status as a juvenile sex offender until he reached age twenty-one, gave rise to a duty of care to and a duty to warn M.C. under section 13–21–117.5(4) or (6). We disagree.

Sections 13–21–117.5(4) and (6) only create an affirmative duty where the person with the developmental disability has communicated to the provider a serious and credible threat against a specific person, § 13–21–117.5(6), or where a federal or state law or Department rule expressly imposes a duty of care, § 13–21–117.5(4). As explained above, plaintiffs do not contend that D.C. communicated a threat against M.C., and plaintiffs cite no law or Department rule, except the inapplicable SOMB guidelines, that expressly imposes a duty of care on providers of services to persons with developmental disabilities. *Cf. Halverson v. Pikes Peak Family Counseling & Mental Health Center, Inc.,* 795 P.2d 1352 (Colo.App.1990) (nearly identically worded statute did not shield mental hospital from liability where plaintiff alleged that another patient communicated to hospital personnel specific threats against her and later sexually assaulted her).

Plaintiffs present no genuine issue of material fact that precludes summary judgment. Because defendants are immune from liability to third persons as providers of services to persons with developmental disabilities, they are entitled to judgment as a matter of law. Accordingly, we do not disturb the district court's summary judgment ruling.

The judgment is affirmed.

Judge CASEBOLT and Judge GABRIEL concur.