Opinion by JUDGE HAWTHORNE
¶ 1 Plaintiffs, Mac McShane and Cynthia Calvin, appeal the trial court's judgment in favor of defendant, Stirling Ranch Property Owners Association, Inc. (POA). We affirm.
I. Facts and Procedural History
¶ 2 Plaintiffs purchased a lot in Stirling Ranch intending to construct a residential home. The lot was subject to the Second Amended and Restated Declaration of Covenants, Conditions, Restrictions and Easements for Stirling Ranch, P.U.D. (Declaration). Under the Declaration, each lot owner in the Stirling Ranch community is a member of the POA. The POA is governed by an Executive Board and the board appoints and removes members of the POA's Design Review Board (DRB). The Executive Board and the DRB are charged with enforcing the Declaration and the Stirling Ranch Design Guidelines (Design Guidelines). Thus, these two components-the governing/administrative boards and the membership-constitute the POA.
¶ 3 Before plaintiffs began construction, they were required to submit design plans from a licensed architect to receive the DRB's approval. The Design Guidelines require designs to conform to Garfield County's height requirements. Plaintiffs' architect mistakenly represented to the DRB that the designs complied with these requirements, and the DRB did not notice a failure to meet them. So, the DRB approved plaintiffs' initial designs.
¶ 4 Plaintiffs then began construction. The county issued a stop work order when it learned that the home exceeded its building height requirements. As a result, plaintiffs stopped construction and had to redesign their home.
¶ 5 Plaintiffs submitted redesigned plans to the DRB complying with the county's height requirements. The DRB rejected the plans because, according to the DRB, they *148 did not otherwise comply with the Design Guidelines. Plaintiffs later submitted a second set of redesign plans removing the home's second story and the DRB approved these plans.
¶ 6 Plaintiffs ultimately brought three claims against the POA. They alleged that the redesign of their home caused them $261,565.97 in damages. The trial court concluded that the POA had not breached its fiduciary duty and that the Declaration's Limitation of Liability section and the Design Guideline's Non-Liability section (the exculpatory clauses) barred plaintiffs' claims for declaratory judgment/equitable estoppel and negligence.
II. Exculpatory Clauses
¶ 7 Plaintiffs assert that the court erred in concluding that the exculpatory clauses barred their claims against the POA for declaratory judgment/equitable estoppel and negligence. We disagree.
A. Standard of Review
¶ 8 The scope and validity of an exculpatory clause are questions of law. See B & B Livery, Inc. v. Riehl, 960 P.2d 134, 136 (Colo. 1998). We review a question of law de novo. Wycoff v. Grace Cmty. Church of Assemblies of God, 251 P.3d 1260, 1264 (Colo. App. 2010) (reviewing de novo an exculpatory clause's validity).
B. Exculpatory Provisions and Applicable Law
¶ 9 The Declaration and the Design Guidelines include provisions limiting the DRB's liability. Under a section entitled "Limitation of Liability" the Declaration provides:
The Design Review Board will use reasonable judgment in accepting or disapproving all plans and specifications submitted to it. Neither the Design Review Board nor any individual Design Review Board member will be liable to any person for any official act of the Design Review Board in connection with submitted plans and specifications, except to the extent the Design Review Board or any individual Design Review Board member acted with malice or intentional wrongful acts. Approval by the Design Review Board does not necessarily assure approval by the appropriate governmental body or Garfield County. Notwithstanding that the Design Review Board has approved plans and specifications, neither the Design Review Board nor any of its members will be responsible or liable to any Owner, developer or contractor with respect to any loss, liability, claim or expense which may arise by reason of such approval of the construction of the improvements. Neither the Executive Board, the Design Review Board, nor any agent thereof, nor Declarant, nor any of its partners, employees, agents or consultants will be responsible in any way for any defects in any plans or specifications submitted, revised or approved in accordance with the provisions of the Association Documents, nor for any structural or other defects in any work done according to such plans and specifications.
Similarly, a section entitled "Non-Liability" in the Design Guidelines provides:
Neither the DRB nor any member of the DRB will be liable to the Master Association, any Owner or any other person for any damage, loss or prejudice suffered or claimed on account of: 1. Approving or disapproving any plans, specifications and other materials, whether or not defective; 2. Constructing or performing any work, whether or not pursuant to approved plans, specifications and other materials; 3. The development or manner of development of any land within Stirling Ranch; 4. Executing and recording a form of approval or disapproval, whether or not the facts stated therein are correct; and 5. Performing any other function pursuant to the provisions of the Design Guidelines or the CC & R's.[1]
¶ 10 The trial court concluded that these sections created valid exculpatory clauses because *149 (1) the DRB owes no duty to the public; (2) the service provided by the DRB in reviewing and approving plans for homes being built in Stirling Ranch was not a public concern; (3) there was no disparity in bargaining power between the parties; and (4) the parties' intent was expressed clearly and unambiguously. The court also addressed plaintiffs' argument that the sections only discussed the DRB:
Plaintiffs argue that the exculpatory provisions are not applicable because the language in the clauses never mentions the POA, the clauses only mention the DRB and Plaintiffs did not sue the DRB. This argument is disingenuous. The POA can only act through its various committees and boards. Moreover, Plaintiffs entire case involved alleged actions or inactions of the DRB which caused them damages. Plaintiffs can't have it both ways. They can't argue that the exculpatory clauses [do not] apply to the POA and then base all [their] claims on the acts of the DRB. If the DRB is immune from liability, then it follows that the POA is also immune since the basis for all acts of negligence were acts of the DRB.
The court concluded that the exculpatory clauses set forth in the sections mentioned above were enforceable and barred plaintiffs' claims against the POA for declaratory judgment/equitable estoppel and negligence.
¶ 11 We consider the following four factors when examining an exculpatory clause's validity: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the parties' intentions were expressed in clear and unambiguous language. Jones v. Dressel, 623 P.2d 370, 376 (Colo. 1981).
C. Analysis
¶ 12 We first reject the argument that the exculpatory clauses are inapplicable because plaintiffs only named the POA as a defendant.
¶ 13 The Declaration establishes the DRB and charges it with the "promulgation, establishment, administration, and enforcement of Design Guidelines." The Executive Board is the "governing body of the Association elected to perform the obligations of the Association relative to the operation, maintenance, and management of the Property and all improvements on the Property." The Executive Board has the right to appoint, remove, or replace the DRB's members. Plaintiffs state that the DRB's and Executive Board's joint decision denying their redesign plans is the conduct on which they base their claims against the POA. And plaintiffs concede that this decision was an act of the POA. So, the DRB and Executive Board are components of the POA and have no separate identity.
¶ 14 The amended complaint describes the DRB's denial of plaintiffs' redesign plans as the basis for plaintiffs' declaratory judgment/equitable estoppel claim and plaintiffs presented a similar basis for this claim at trial. Plaintiffs' claim that the POA was negligent is based solely on the DRB's actions, and mostly alleged the POA, "acting through the DRB," was negligent. We note, however, that plaintiffs' amended complaint also included a negligence claim alleging that the POA owed a duty to supervise and appoint competent, capable, and qualified DRB members. Despite these allegations, it appears plaintiffs did not ultimately pursue this negligence theory at trial.
¶ 15 Plaintiffs do not argue on appeal different underlying theories for their declaratory judgment/equitable estoppel and negligence claims. Thus, the court correctly concluded that these claims arose from the DRB's actions. We now address whether, under the four Jones factors, the exculpatory clauses were valid as applied to the DRB's actions.
¶ 16 As to the first Jones factor, plaintiffs assert that the Colorado Common Interest Ownership Act (CCIOA), sections 38-33.3-101 to-402 C.R.S. 2014, confirms that the operation of homeowners' associations is a matter of public concern. Even if that is true generally, section 38-33.3-302(3)(b), C.R.S. 2014, specifically provides:
Decisions concerning the approval or denial of a unit owner's application for architectural or landscaping changes shall be *150 made in accordance with standards and procedures set forth in the declaration or in duly adopted rules and regulations or bylaws of the association, and shall not be made arbitrarily or capriciously.
We analyze a statute according to its plain language and apply it as written if it is clear and unambiguous on its face. Vista Ridge Master Homeowners Ass'n v. Arcadia Holdings at Vista Ridge, LLC, 2013 COA 26, ¶ 9, 300 P.3d 1004.
¶ 17 The statute's plain language vests homeowners' associations with the power to review architectural changes in accordance with the declaration and any duly adopted association rules, regulations, or bylaws.[2] Although their decision may not be arbitrary and capricious, the statute otherwise permits homeowners' associations to regulate their decision-making process. Thus, the DRB's decision whether to approve or deny architectural designs is not a matter of public concern, and does not implicate a duty to the general public, because the statute expressly concedes this specific area of regulation to homeowners' associations.
¶ 18 Plaintiffs also contend that the limitation of liability for homeowners' association volunteers under section 38-33.3303(2)(b), C.R.S. 2014, supports their "matter of public concern" argument. Under section 38-33.3-303(2)(b), "[i]f not appointed by the declarant, no member of the executive board and no officer shall be liable for actions taken or omissions made in the performance of such member's duties except for wanton and willful acts or omissions." We do not agree that the immunity provided the DRB and the Executive Board by the exculpatory clauses is inconsistent with, or invalid because of, the legislature's decision to grant statutory immunity only to executive board members and officers. This statutory grant of immunity does not give rise to a public concern preventing the parties from contracting for similar or additional immunity. See Chadwick v. Colt Ross Outfitters, Inc., 100 P.3d 465, 468 (Colo. 2004) (stating that parties may, consistent with the statute, contract to release a party from negligent conduct). Though the statute's plain language does not reference entities, the legislature's decision to expressly provide immunity to individuals does not imply it meant to deprive parties of the ability to adopt exculpatory clauses in this context.
¶ 19 Next, as to the second Jones factor, plaintiffs assert that the prevalence of homeowners' associations makes the service provided by the DRB an unavoidable practical necessity. When evaluating the service's nature under this factor, we ask whether utilizing the service is a matter of choice or necessity. See Hamill v. Cheley Colo. Camps, Inc., 262 P.3d 945, 949 (Colo. App. 2011). Although plaintiffs needed to receive the DRB's approval before beginning construction, plaintiffs were not initially required to develop property governed by the POA. The DRB's decision to approve or deny plaintiffs' designs for a $700,000 custom home is not a public service that plaintiffs must necessarily use given the available housing outside of new custom home construction. Also, we note that any interest the public has in the creation of residential housing was satisfied here because plaintiffs substantially constructed their home.[3]
¶ 20 Relying on Concerned Parents of Pueblo, Inc. v. Gilmore, 47 P.3d 311, 312 (Colo. 2002), plaintiffs also assert that exculpatory provisions affecting non-profit corporations may only protect individuals and not entities. But Gilmore did not evaluate the validity of an exculpatory clause. As plaintiffs explain, Gilmore determined whether statutory immunity from liability under section 13-21-116(2.5)(a), C.R.S. 2014, extended beyond volunteers to include non-profit organizations. Similarly, plaintiffs contend that section 38-33.3-303(2)(b) provides board members and officers immunity from liability but does not extend such protection to the *151 POA. However, the question of whether the POA is statutorily immune from liability is different from whether the exculpatory provisions here validly provide such immunity. The trial court's decision did not rely on statutory immunity and neither do we. Thus, we decline to address whether section 38-33.3-303(2)(b) may be expanded to include the POA.
¶ 21 Plaintiffs argue that under the third Jones factor the exculpatory clauses were not fairly entered into because they only mention the DRB and not the POA. And they contend that the failure to identify the exculpated party necessarily provided defendant with an unfair bargaining advantage. We disagree.
¶ 22 Exculpatory agreements are unfairly agreed on if one party's bargaining power leaves it at an obvious disadvantage resulting in a contract placing that party at the mercy of the other party's negligence. Heil Valley Ranch, Inc. v. Simkin, 784 P.2d 781, 784 (Colo. 1989) (stating that exculpatory agreements between employer and employee, and between common carriers or public utilities and members of the public, are generally held invalid). We evaluate fairness by asking whether the service could have been obtained elsewhere. Hamill, 262 P.3d at 950.
¶ 23 As discussed previously, plaintiffs' claims were based on the DRB's and the Executive Board's actions. So, the exculpatory clauses properly notified plaintiffs of the intended protected party. The exculpatory clauses were otherwise fairly accepted because plaintiffs were never placed in an unfair bargaining position given the availability of other housing options. And plaintiffs do not otherwise contest the court's findings that there was no evidence of any disparity in bargaining power. Also, plaintiffs reviewed the Declaration and the Design Guidelines before they purchased the property and knew they needed DRB approval before they could begin construction. Thus, the exculpatory clauses were entered into fairly.
¶ 24 Finally, as to the fourth Jones factor, plaintiffs assert that the exculpatory clauses are invalid because they did not clearly and unambiguously name the POA. We are not persuaded.
¶ 25 When reviewing a contract, we enforce the contract's language according to the contract terms' plain and generally accepted meaning. E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co., 109 P.3d 969, 974 (Colo. 2005). In determining whether contractual terms are ambiguous, we ask whether the terms are susceptible of more than one reasonable interpretation. B & B Livery, Inc., 960 P.2d at 136. When a contract is unambiguous, we give effect to its plain meaning. USI Props. E., Inc. v. Simpson, 938 P.2d 168, 173 (Colo. 1997).
¶ 26 Again, the DRB was clearly named in the exculpatory clauses and plaintiffs sued the POA based on the DRB's action. And plaintiffs concede that the exculpatory clauses' plain language provides clear and unambiguous protection to the DRB. In addition, the Declaration's exculpatory clause states that the DRB and the Executive Board will not be "responsible in any way for any defects in any plans or specifications submitted, revised, or approved in accordance with the provision of the Association Documents." Similarly, the Design Guideline's exculpatory clause states that the DRB will not be liable for "[a]pproving or disapproving any plans, specifications and other materials, whether or not defective." The exculpatory clauses' plain language released the DRB from liability for decisions regarding the approval or disapproval of designs.
¶ 27 We conclude that the exculpatory clauses are valid because they do not implicate a public duty, do not involve an essential service, were fairly entered into, and plainly express the intent to release the DRB from liability.
III. Breach of Fiduciary Duty
¶ 28 Plaintiffs argue that the trial court erred in concluding that the POA did not breach its fiduciary duty. We are not persuaded.
A. Standard of Review and Applicable Law
¶ 29 We review for clear error whether a fiduciary duty has been breached.
*152 Mintz v. Accident & Injury Med. Specialists, PC, 284 P.3d 62, 68 (Colo. App. 2010), aff'd, 2012 CO 50, 279 P.3d 658. A court's findings are clearly erroneous if they are not supported by the record. Citizens Progressive Alliance v. Sw. Water Conservation Dist., 97 P.3d 308, 313-14 (Colo. App. 2004).
¶ 30 Under section 38-33.3-303(2)(a), "[i]f appointed by the declarant, in the performance of their duties, the officers and members of the executive board are required to exercise the care required of fiduciaries of the unit owners." Generally, a homeowners' association owes a fiduciary duty to homeowners. See Woodward v. Bd. of Dirs. of Tamarron Ass'n of Condo. Owners, Inc., 155 P.3d 621, 624 (Colo. App. 2007) (stating that a homeowners' association has a fiduciary duty to homeowners to enforce restrictive covenants). "This duty has been imposed in recognition of the power held by homeowner associations, the quasi-governmental functions they serve, and the impact on value and enjoyment that can result from the failure to enforce covenants." Colo. Homes, Ltd. v. Loerch-Wilson, 43 P.3d 718, 722 (Colo. App. 2001).
¶ 31 As quoted previously:
Decisions concerning the approval or denial of a unit owner's application for architectural or landscaping changes shall be made in accordance with standards and procedures set forth in the declaration or in duly adopted rules and regulations or bylaws of the association, and shall not be made arbitrarily or capriciously.
§ 38-33.3-302(3)(b). Also, a decision by a homeowners' association, through its architectural control committee, approving or disapproving plans " 'must be reasonable and made in good faith and must not be arbitrary or capricious.' " Woodward, 155 P.3d at 624 (quoting Rhue v. Cheyenne Homes, Inc., 168 Colo. 6, 9, 449 P.2d 361, 363 (1969) ). Whether the homeowners' association acted reasonably or arbitrarily is a factual question. Id. at 625.
B. The Trial Court's Order
¶ 32 The court concluded that the POA's decision to reject the revised design did not breach its fiduciary duty and was not arbitrary or capricious. It relied on evidence explaining why the POA and the DRB rejected plaintiffs' redesign plans. This evidence indicated that the plans were rejected because the redesign (1) was three stories; (2) impacted view planes or corridors; and (3) did not reduce the home's mass or height. The court concluded that these reasons for rejecting the redesign plans were consistent with the Design Guidelines' goals to (1) minimize the visual impact of site development on roads and other home sites and (2) protect the view corridors. The court then concluded that the redesign plans were rejected, consistent with the Design Guidelines, because they did not minimize the visual impact on a neighboring property and continued to negatively impact that neighboring property's view corridor.
C. Analysis
¶ 33 Plaintiffs assert that the POA and DRB denied their redesign plans in an arbitrary and capricious manner because they did not consider plaintiffs' reasonable reliance on the initial design approval. In other words, plaintiffs argue that once the redesign plans complied with the county's height requirement, the POA and DRB would breach their fiduciary duty if they rejected a redesign that otherwise followed the initially approved plans. We disagree.
¶ 34 Plaintiffs do not challenge the factual findings supporting the court's conclusion that defendant did not breach its fiduciary duty.[4] Instead, they argue that the court should have considered additional factual circumstances in reaching its conclusion. But plaintiffs point to no rule of law or Design Guidelines provision requiring the POA and DRB to consider the substantial similarity of the initial design plan to the redesign plan or *153 barring them from reevaluating the entirety of a redesign plan.
¶ 35 The fact remains that the POA and DRB were asked to review a new design submitted by plaintiffs because plaintiffs failed to comply with the county's height requirements. The POA and DRB were not asked to review their prior decision. Regardless of what happened with the initial design approval, the relevant question before the court was whether the POA and DRB breached their fiduciary duty in reviewing the redesign plan. We conclude the court did not err because the record supports the court's findings and plaintiffs have not shown that these findings were clearly erroneous.
IV. Conclusion
¶ 36 The judgment is affirmed.
JUDGE BERNARD and JUDGE MILLER concur.

We note that the parties rely on different versions of the Design Guidelines, but do not dispute which version applies or assert that the version we select is outcome determinative. Thus, we review the version of the Design Guidelines referenced by the trial court.

We note that the CCIOA uses the term unit owners' association, but because the parties refer to homeowners' associations, we will use that term for ease of reference.

Given the limited nature of our decision, we do not share plaintiffs' concern that affirming the exculpatory clauses' validity with respect to the DRB will permit the POA to "act negligently or in violation of the[ir] fiduciary obligations without consequence."

Plaintiffs assert that the redesign was two stories and not three stories. However, they concede that whether the home was two or three stories was "a matter of semantics and is immaterial." Plaintiffs also dispute other factual findings but we do not address these arguments because plaintiffs raised them for the first time in their reply brief. See Flagstaff Enters. Constr. Inc. v. Snow, 908 P.2d 1183, 1185 (Colo. App. 1995).